1

**THE LAW OFFICE OF ROBERT L. STARR**

2

Robert L. Starr, State Bar No. 183052
robert@starrlaw.com

3

23901 Calabasas Road, Suite 2072
Calabasas, CA 91302

4

Voice: 818-225-9040
Facsimile: 818-225-9042

5

6

*Attorneys for Plaintiff*

7

UNITED STATES DISTRICT COURT

8

EASTERN DISTRICT OF CALIORNIA

9

10

LUX GLOBAL AUTO SALES, a California
Corporation, on behalf of itself and others
similarly situated,

11

12

Plaintiff,

13

vs.

14

NISSAN NORTH AMERICA, INC., and
DOES 1 through 10, inclusive,

15

16

Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

Case No.

**CLASS ACTION**

**COMPLAINT FOR:**

**(1) VIOLATIONS OF CALIFORNIA
BUSINESS AND PROFESSIONS
CODE SECTION 17200, *ET SEQ.; and,***

**JURY TRIAL DEMANDED**

Plaintiff Lux Global Auto Sales, Inc., ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, brings this action against Defendant Nissan North America, Inc. ("Defendant" or "Nissan"), upon information and belief, except as to its own actions, the investigation of its counsel, and the facts that are a matter of public record, and alleges as follows:

## INTRODUCTION

1.     This class action arises out of Nissan's failure to properly identify and pay for repairs and replacement of transmissions that should correctly be covered for 15-years or 150,000-miles, pursuant to California Code of Regulations ("CCR") Title 13, Section 1962.1, 2035, 2037 and 2038, ("California Emissions Warranty"), relating to Partial Zero Emissions Vehicles and Super Ultra Low Emissions Vehicles, for which Nissan has received a .2 Zero Emissions Credit from the California Air Resources Board ("CARB"). These vehicles are collectively referred to as "PZEV" vehicles. As a result of Nissan not providing proper coverage, Plaintiff and members of the Class are paying out of pocket for repairs that should be covered under the California Emissions Warranty. Plaintiff's claims relate specifically to all Nissan brand PZEV vehicles for which Nissan is not providing 15-years or 150,000-miles coverage relating to the transmission. ("Class Vehicles").

2.     As will be explained herein, CARB has already determined that transmission defects which cause an illumination of the malfunction indicator lamp ("MIL" or Check Engine Light"), are covered under the 15-years or 150,000-miles California Emissions Warranty. This is because, pursuant to Title 13, Section 19682, the MIL is not supposed to illuminate unless the vehicle's onboard diagnostic system ("OBDII") has detected a defect which increases regulated emissions. Furthermore, a defect which would cause illumination of the MIL would result in the vehicle failing a California smog check. Pursuant to the California Emissions Warranty, defects which increase regulated emissions, defects which cause the MIL to illuminate, and defects which would cause a vehicle to fail a California smog check are covered under the California Emissions Warranty. Nissan has failed to extend this coverage, which is an unlawful business practice.

## BACKGROUND

3.      For decades, Nissan has been in the business of importing and distributing Nissan vehicles to the State of California, with the intent for California customers to purchase Nissan brand vehicles for use in the state of California. As such, the Nissan vehicles have been subject to state and federal regulations regarding both emissions standards and regarding Nissan's obligations to provide customers with warranties relating to emissions parts.

4.      California Code of Regulations section 1962.1, 2035, 2037, and 2038, requires that, for PZEV vehicles for which PZEV credits are provided, all defects in materials or workmanship that would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, all defects in materials or workmanship that would increase emissions, and all defects in materials or workmanship that would result in the vehicle not being able to pass a California smog check are warranted for *15-years* or *150,000-miles*, whichever occurs first (italics added), pursuant to the California Emissions Warranty. The 15-year warranty period is reduced to 10 years or 150,000-miles only for "a zero-emission energy storage device used for traction power (such as a battery, ultracapacitor, or other electric storage device)." The Class Vehicles are all defined as all vehicles which would qualify as PZEV vehicles as defined pursuant to California Code of Regulations 1962.1 for which Nissan has received a .2 ZEV credit.

5.      Pursuant to the California Code of Regulations, Nissan is required to cover all parts that satisfy Section 1962.1, 2035, 2037, and 2038 as being emissions related parts, 15-years or 150,000-miles, unless the emissions part is a battery or other zero emission storage device, wherein the warranty is 10 years or 150,000-miles.

6.      Nissan fails to comply with these statutory requirements by failing to provide 15-years or 150,000-miles California Emissions Warranty coverage for transmission defects which cause illumination of the MIL, which cause an increase in regulated emissions and/or which would cause a vehicle to fail a smog check. The Class Vehicles are defined as all Nissan brand PZEV vehicles for which Nissan has received a .2 ZEV credit from the state of California, and for which Nissan has failed to provide 15-years or 150,000-miles California Emissions

Warranty coverage for transmission defects which increase regulated emissions, cause a MIL to illuminate or would cause Class Vehicles to fail a smog check.

7.      Nissan is engaged in a scheme to limit its warranty exposure under California's emissions warranty requirements in violation of California emissions law by unilaterally defining and wrongfully limiting the parts that should properly be identified as parts covered by the California Emissions Warranty and covered for 15-years or 150,000-miles under the CCR.

8.      The CCR clearly states that any part which would cause the vehicle's MIL to illuminate, increase regulated emissions or that would result in the vehicle not being able to pass a California smog check must be covered for 15-years or 150,000-miles. However, Nissan's California Emissions Warranty for the Class Vehicles identifies only a handful of emissions parts that Nissan contends qualify for the California Emissions Warranty's 15-years or 150,000-mile warranty coverage. That list, generated by Nissan, for its own financial benefit to save warranty costs, is woefully inadequate and incomplete and fails to identify, or provide extended warranty coverage for, *all* of the emissions related parts that, in fact, qualify for extended 15-years or 150,000-mile coverage under the CCR.

9.      By narrowly self-defining the parts that are required to be covered under the California Emissions Warranty, Nissan is able to reduce the amount of money that Nissan spends on warranty-related repairs, knowing that most if not all dealerships or customers will not investigate or understand what components should actually and correctly be covered under the California Emissions Warranty as required by the CCR.

10.      As a result of Nissan's conduct, Plaintiff and Class members have paid and are continuing to pay out of pocket for repairs that should be covered under the California Emissions Warranty.

11.      Plaintiff's theory does not depend on the premise that CARB was deceived by the information that Nissan submitted, or that CARB ever expressed a concern about Nissan's classification of components as being covered by the California Emissions Warranty. Plaintiff is not accusing CARB of mismanagement or blaming CARB for Nissan's inaccuracy. Nissan is alone is responsible for selecting and identifying to CARB the parts that Nissan has unilaterally

1   identified as being covered by the California Emissions Warranty, as part of its application for

2   vehicle certification. That list may be correct as far as it goes or as far as CARB may know. But,

3   as Plaintiff alleges, the list of parts Nissan submitted to CARB was incomplete, as evidenced by

4   Plaintiff's own experience.

5                              **JURISDICTION AND VENUE**

6          12.    This Court has original jurisdiction over the subject matter of this action pursuant

7   to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class are citizens of a state different

8   from that of Nissan; and (ii) aggregating the claims of individual Class members, the total

9   matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs.

10  Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) Nissan is not a state, state official, or

11  other governmental entity against whom the Court may be foreclosed from ordering relief, and

12  (ii) the number of members of the Class in the aggregate exceeds 100.

13         13.    This Court has personal jurisdiction over Nissan because Nissan has sufficient

14  minimum contacts with California, having intentionally availed itself of the California market so

15  as to render the exercise of jurisdiction over it by this District Court consistent with traditional

16  notions of fair play and substantial justice.

17         14.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Nissan

18  conducts business within the State of California, has failed to designate with the office of the

19  California Secretary of State a principal place of business in California, and a substantial part of

20  the events giving rise to the claims alleged herein occurred in this District.

21         15.    All of the wrongful acts complained of by Plaintiffs occurred in the state of

22  California, county of Sacramento.

23                                    **PARTIES**

24         16.    Plaintiff Lux Global Auto Sales, Inc., is, and at all times relevant hereto has been,

25  a California Corporation, located at 721 North B Street #33, Sacramento, California 95811.

26  Plaintiff is located in the county of Sacramento.

27  ///

28  ///

17.     Defendant Nissan was and is, upon information and belief, a California corporation, headquartered in Franklin, Tennessee, doing business in the State of California. Nissan sells PZEV Vehicles, including the Class Vehicles, in the State of California.

18.     The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of Nissan at all relevant times.

19.     Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations, when the same have been ascertained. Each reference in this Complaint to "Nissan" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

20.     Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

## SUBSTANTIVE ALLEGATIONS

21.     On August 21, 2019, Plaintiff purchased a 2014 Nissan Sentra, VIN 3N1AB7AP0EL606771 ("Plaintiff's Vehicle") at the Manheim Auction, located at 29900 Auction Court, Hayward, California. The purchase occurred in the county of Alameda, California.

22.     On February 20, 2020, at 82,110 miles, Plaintiff's Vehicle was presented to Nissan of Sacramento, a Nissan Authorized repair facility, for repairs. The complaint was that while driving, Plaintiff's Vehicle was juddering and was slow to respond to the accelerator. The dealership confirmed that Plaintiff's Vehicle was juddering as well as slipping under load. The dealership identified fault codes P17F0, P17F1, and P17F4. The dealership recommended replacing the transmission. Plaintiff was denied warranty coverage and advised that Plaintiff

would have to pay out of pocket for the repairs. Plaintiff was charged a diagnostic fee of $165.00. Plaintiff paid additional money to have Plaintiff's Vehicle repaired.

23.     Transmission slipping is described as a delay in acceleration when stepping on the gas, and a condition where your engine has to work harder than normal to achieve a certain speed. This condition increases fuel consumption and increases regulated emissions.

24.     There is a generic fault code used by many vehicle manufacturers which is triggered when transmission slipping outside normal operating range is identified by a vehicle's OBDII system. The fault code is P0894. It is alleged on information and belief that the presence of this fault code will trigger the MIL. With regard to the Class Vehicles, Nissan's OBDII system will trigger fault codes P17F0, P17F1, P17F2, P17F3 and/or P17F4 when transmission slipping is detected. Nissan Technical Bulletin NTB18-058d indicates that the MIL will not be illuminated when these fault codes are detected. It is alleged on information and belief that Nissan's OBDII system relating to the Class Vehicles does not comply with California law, because the system fails to illuminate a MIL when excessive transmission slipping, outside of normal operating range, has been detected. As a result, the Class Vehicles will not display a MIL even when a defect is identified which increase regulated emissions.

25.     On information and belief, it is alleged that the defects in the transmission of Plaintiff's Vehicle as identified on February 20, 2020, and the fault codes present, would have caused Plaintiff's Vehicle to fail a smog check.

26.     The defects in Plaintiff's transmission as identified on February 20, 2020 do increase regulated emissions.

27.     In summary, although Nissan of Sacramento identified a defect which increased regulated emissions, which caused fault codes that should have triggered a MIL, and which would have caused Plaintiff's Vehicle to fail a smog check, and even though Plaintiff's Vehicle had not yet been driven 15 years or 150,000 miles, Nissan failed to extend California Emissions Warranty coverage relating to the transmission defect.

28.     Subsequent to the February 20, 2020 visit, Plaintiff made exhaustive attempts to request Nissan provide California Emissions Warranty coverage for the transmission defect,

however Nissan refused to provide the coverage, and refused to acknowledge that any of the components of the transmission were covered by the California Emissions Warranty.

29.    CARB has already confirmed that transmission defects which cause the MIL to illuminate should be covered under the California Emissions Warranty. The reason for this is that transmission defects which cause the MIL to illuminate are by definition defects which either increase regulated emissions or are defects which are causing the OBDII system to not function properly. The OBDII system's purpose as defined by the CCR is to detect defects which increase regulated emissions.

30.    A public records request of CARB was served by Plaintiff's counsel in February of 2021. In response, among other things, CARB produced a document indicating that CARB had reviewed a customer complaint regarding a 2007 Nissan Altima PZEV vehicle with 122,232 miles. The document is attached as Exhibit "1" to this complaint. The customer complaint was regarding Nissan's denial of warranty coverage for a transmission replacement. The transmission needed to be replaced because of a malfunctioning pressure control solenoid, indicating imminent transmission failure. The failure of the component illuminated the vehicle's MIL and also caused it to fail a smog check. CARB staff stated that the Nissan transmission replacement should be covered under the PZEV warranty due to the P0745 fault code causing the MIL to illuminate. Section 1968.2 of the CCR states that the OBDII system shall monitor for malfunction of any electronic powertrain component/system, including solenoids, which provide signals to the powertrain control system. In the document produced by CARB, CARB noted that the implications of requiring transmission repair/replacement under the PZEV warranty could lead to strong opposition from Nissan and other manufacturers that would have handled the situation in a similar manner. The document indicated that CARB recommend CARB legal review Nissan's warranty language to determine if transmissions are covered, require Nissan to repair the transmission for the 2007 Altima under the PZEV warranty, issue a memo notifying all manufacturers of the requirements of the PZEV warranty and informing them of their obligations to meet these requirements, and require all manufacturers to have their dealerships reimburse customers for repairs that should have been covered under the PZEV warranty.

31.     The whole purpose of the MIL is to detect if there is a defect which increases regulated emissions. Nissan's OBDII system relating to the Class Vehicles appears to be designed specifically to not report some defects which increase regulated emissions; i.e. transmission slipping.

32.     On July 6, 2021, CARB, through the California Attorney General, provided a declaration to Plaintiff's counsel, with the understanding that it would be submitted only in litigation centered on California's vehicle emissions warranty. The Declaration was created for the sole purpose of educating the Courts about CARB's interpretation and implementation of California's warranty requirements and was not provided on behalf or in support of any particular party or filing. The cover letter to the declaration stated that a party submitting the Declaration in any court case should not to represent that CARB endorses, supports, or opposes any motion or other filing, or that CARB endorses, supports, or opposes any particular party or position. The cover letter indicated that the declaration should not be captioned in a manner that suggests it is in support of or opposition to any court filing. The declaration and cover letter are attached as Exhibit "2".

33.     The declaration indicates that, "A part subject to California's vehicle emission warranty is called a warranted part. California Code of Regulations, 13 section 2035 defines a warranted part as... For 1990 and subsequent model year passenger cars, light-duty trucks, and medium duty vehicles other than those identified in (a), above, any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards."

34.     There is no good faith argument that a defect which causes transmission slipping which is so severe that it triggers a diagnostic fault code is not a defect which increases regulated emissions. There is also no good faith argument that such a defect defect was not present in Plaintiff's Vehicle during the 15-years or 150,000-mile warranty coverage. Notwithstanding, Nissan has refused to provide warranty coverage.

///

35.    But Nissan's wrongful conduct is much more disturbing. Not only has Nissan failed to disclose to its customers that the transmissions installed in the Class Vehicles are covered for 15-years or 150,000-miles, but in response to a series of class action lawsuits relating to certain Nissan transmissions, Nissan has attempted to enter into binding settlement agreements which actually shorten the transmission warranty period for some of the Class Vehicles. These settlement agreements violate the California Emissions Warranty and are not enforceable. But the settlement agreements do serve a valuable benefit to Nissan of providing further misinformation to Nissan customers in order to undermine customers' ability to obtain proper warranty coverage.

36.    For example, there was an action filed against Nissan entitled *Weckwerth v. Nissan*, 18-cv-00588. This was a lawsuit alleging the transmissions installed in the Weckwerth Class Vehicles, defined as 2013-2017 Nissan Sentras, 2014-2017 Nissan Versa Notes and 2012-2017 Nissan Versas were defective. Some of these vehicles were PZEV vehicles, also included in this action's definition of a Class Vehicle. Plaintiff's Vehicle, a 2014 Nissan Sentra would be included as a Weckwerth Class Vehicle. The settlement of *Weckwerth v. Nissan* provided a reimbursement program and a warranty extension, so that the transmission would be covered for 84 months or 84,000 miles, with certain exceptions providing a slightly longer warranty. The import of this settlement for PZEV vehicles is that it actually shortens the warranty for PZEV transmissions by 7 years or 66,000 miles. And even if it was not Nissan's intention to shorten the warranty for PZEV vehicles, Nissan's failure to disclose its warranty obligations relating to PZEV vehicles, coupled with the settlement notice documents in *Weckwerth v. Nissan*, at the very least provide very disturbing and misleading misinformation to customers. Attached as Exhibit "3" are the settlement notice documents in *Weckwerth v. Nissan*.

37.    California Code of Regulations Section 1962.1, California Code of Regulations Section 2035, *et seq.*, California Code of Regulations Section 2037, *et seq.*, and California Code of Regulations Section 2038, *et seq.*, establish the minimum warranty coverage that Nissan is required to provide to customers relating to Nissan Partial Zero Emissions Vehicles and Hybrid Vehicles that Nissan imports and distributes in California.

38.     Pursuant to California Code of Regulations Section 2035, with regard to 1990 and subsequent model year vehicles, a "warranted part" is defined as "any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards."

39.     Furthermore, California Code of Regulations Section 2037(b) states: "The manufacturer of each motor vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent purchaser that the vehicle or engine is:

(1)     Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and

(2)     Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years or 50,000 miles, whichever first occurs; and

(3)     Free from defects in materials and workmanship which cause the failure of a warranted part described in section (c) below for seven years or 70,000 miles, whichever first occurs."

40.     California Code of Regulations Section 2037(c) states:

(1)     Each manufacturer shall identify in its application for certification the "high-priced" warranted parts which are:

(A)     For 1990 through 2007 model year vehicles: [i] included on the Board's "Emissions Warranty Parts List" as last amended February 22, 1985, incorporated herein by reference, and; [ii] have an individual replacement cost at the time of

certification exceeding the cost limit defined in section (c)(3);

(B)    For 2008 and subsequent model year vehicles: [i] subject to coverage as a warranted part in section (b)(2) above, and; [ii] have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3).

(2)    The replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis. The costs shall be those of the highest-cost metropolitan area of California.

(3)    The cost limit shall be calculated using the following equation:

Cost limit $\{n\}$ = \$300 x (CPI$\{n\text{-}2\}$)/ 118.3)

Cost limit $\{n\}$ is the cost limit for the applicable model year of the vehicle rounded to the nearest ten dollars.

41.    With regard to Partial Zero Emissions Vehicles, California Code of Regulations 1962.1 extends the performance and defects warranty period set forth in subdivision 2037(b)(2) and 2038(b)(2) to 15-years or 150,000-miles, whichever occurs first, except that the time period is to be 10 years for a zero-emission energy storage device used for traction power (such as a battery, ultracapacitor, or other electric storage device). Section 1962.1(D) states, in relevant part: "(D) *Extended Warranty*. Extend the performance and defects warranty period set forth in subdivision 2037(b)(2) and 2038(b)(2) to 15-years or 150,000-miles, whichever occurs first except that the time period is to be 10 years for a zero-emission energy storage device used for traction power (such as a battery, ultracapacitor, or other electric storage device)."

42.    In short, the California Code of Regulations section 1962.1 requires that, for PZEV vehicles, all defects in materials or workmanship that would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate [as defined in the California Code of Regulations section 2037(b)], that would increase the vehicle's emissions, or that would result in the vehicle not being able to pass a California smog check are warranted for *15-years* or *150,000-miles*, whichever occurs first (italics added). The 15-year warranty period is reduced to 10 years or 150,000-miles only for batteries or zero-emission energy storage devices.

43.     Under Sections 1962.1, 2035, 2037, and 2038 of the California Code of Regulations, it is clear that this repair to Plaintiff's vehicle should have been covered for 15-years or 150,000-miles. This is because the defect should have caused the MIL to illuminate, because the defect increased regulated emissions, and because the defect would have caused Plaintiff's vehicle to fail a smog test.

44.     Nissan is unilaterally limiting all of the parts that should properly be identified as covered under the California Emissions Warranty. Nissan's warranty for the Class Vehicles identifies only a handful of emissions parts that Nissan contends qualify for the 15-years or 150,000-mile California Emissions Warranty. That list, generated by Nissan for its own financial benefit, is woefully inadequate and incomplete and fails to identify, or provide extended warranty coverage for, *all* of the emissions parts that, in fact, qualify for extended 15-years or 150,000- mile coverage under Section 1962.1, 2035, 2037, and 2038.

45.     The details of how Nissan applied the California Code of Regulations formula with respect to the transmissions are exclusively within Nissan's possession. Similarly, the information regarding what other parts satisfied the California Code of Regulations requirements but were not identified by Nissan as covered under the California Emissions Warranty also is in the exclusive possession of Nissan.

46.     Nissan has acted as alleged herein in an effort to reduce the amount of money that Nissan spends on warranty-related repairs, knowing that most if not all dealerships or customers will not investigate or understand what components should actually be covered under the California Emissions Warranty. Nissan's conduct is part of a systematic effort by Nissan to avoid complying with California law. If Nissan complied with the terms of California law by properly identifying all parts that are covered under the California Emissions Warranty, then Nissan dealerships would properly provide warranty coverage for covered all parts, and customers would not have to pay out of their own pocket for said repairs.

47.     Nissan's conduct violates California's unfair business practices statute, California Business and Professions Code sections 17200 *et seq.* (the "UCL").

///

48.     Plaintiff and other Class members have suffered damage as a result of Nissan's wrongful, unfair, and unlawful conduct.

49.     Plaintiff also seeks injunctive relief compelling Nissan to properly and fully identify that the transmissions installed in the Class Vehicles should be covered by the California Emissions Warranty and identify the correct warranty period for the transmissions. Some Class members still own Class Vehicles and in the future will need to repair or replace the transmissions. At this time, with regard to the Class Vehicles, Nissan is refusing to provide California Emissions Warranty coverage.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

50.     Plaintiffs re-allege and incorporate by reference each allegation set forth above.

51.     Plaintiffs bring this class action pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(2) and (b)(3) on behalf of themselves and members of the Class as defined below.

52.     Excluded from the Class are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing.

53.     All claims alleged herein arise under California law for which Plaintiffs seek relief authorized by California law.

54.     The Class Vehicles are defined as all Partial Zero Emissions Vehicles and Super Ultra Low Emissions Vehicles, distributed by Nissan in California, for which Nissan has received a .2 Zero Emissions Credit from CARB, and for which Nissan has failed to provide 15-years or 150,000-mile California Emissions Warranty coverage relating to the transmission. Plaintiff and members of the Class are paying out of pocket, and being denied warranty coverage, for repairs that should be covered under the California Emissions Warranty.

55.     Plaintiffs' proposed class consists of and is defined as follows:

> All persons in the State of California who have been owners or lessees of Class Vehicles and who have paid for repairs and parts pertaining to defective transmissions that should have been covered under the 15-years or 150,000-mile California Emissions Warranty (the "Class").

56.     As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are questions of law and fact common to the Class, and those common questions predominate over any questions affecting only individual members. Among the common questions of law and fact include:

    (a)     Whether Nissan has failed, and is failing, to comply with the California Emissions Warranty by failing to provide a 15-years or 150,000-mile California Emissions Warranty for the transmissions installed in the Class Vehicles;

    (b)     Whether Nissan has failed, and is failing, to identify for customers and dealerships the all of the parts that should be identified as covered under the 15-years or 150,000-mile California Emissions Warranty, including but not limited to the transmission;

    (c)     Whether Nissan has engaged in, and is engaging in, a systematic business practice of intentionally failing to identify all of the parts that should be identified as covered under the California Emissions Warranty for 15-years or 150,000-miles, under the CCR relating to the Class Vehicles, including but not limited to coverage of the transmissions.

    (d)     Whether Nissan has failed, and is failing, to identify all of the parts that should be identified as covered under the California Emissions Warranty for 15-years or 150,000-miles, in an effort to reduce the amount of money that Nissan spends on warranty-related repairs relating to the Class Vehicles, including but not limited to coverage of the transmission.

    (e)     Whether Nissan's conduct of failing to identify all of the parts that should be identified as covered under the California Emissions Warranty for 15-years or 150,000-miles results in Nissan customers suffering financial loss relating to the Class Vehicles, including but not limited to coverage of the transmission.

    (f)     Whether Nissan's conduct of failing to identify all of the parts relating to the Class Vehicles, including but not limited to coverage of the transmission, that should be identified as covered under the California Emissions Warranty results in wrongfully minimizing the amount of money that Nissan has to pay out

in warranty claims.

(g)   Whether Nissan's conduct of failing to identify all of the parts that should be identified as covered under the California Emissions Warranty, including but not limited to the transmission, and thus covered by the 15-year or 150,000-mile California Emissions Warranty violates California law.

(h)   Whether Nissan has engaged in, and is engaging in, unlawful and unfair business practices in violation of California Business & Professions Code section 17200, *et seq.* with regard to Nissan's failure to identify all of the parts covered under the California Emissions Warranty relating to the Class Vehicles, including but not limited to coverage of the transmission, that should be covered by the 15-year or 150,000-mile California Emissions Warranty.

(i)   Whether Plaintiffs and Class members are entitled to injunctive relief regarding Nissan's failure to identify all of the parts relating to the Class Vehicles, including but not limited to coverage of the transmission, that should be covered by the 15-year or 150,000-mile California Emissions Warranty.

(j)   The appropriate amount of restitution, or monetary penalties resulting from Nissan's violations of California law.

(k)   Whether Nissan has engaged in, and is engaging, in concealment pertaining to Nissan's failure to identify all of the parts relating to the Class Vehicles, including but not limited to coverage of the transmission, that should be covered by the 15-year or 150,000-mile California Emissions Warranty.

57.   Numerosity: As required by Fed. R. Civ. P. 23(a)(1), the members of the Class are so numerous that joinder of all Class members would be unfeasible and impractical, and the resolutions of their claims through the procedure of a class action will be of benefit to the Parties and the Court. The membership of the entire Class is unknown to Plaintiffs at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

58.   Typicality: As required by Fed. R. Civ. P. 23(a)(3), Plaintiffs' claims are

1   typical of the claims of all Class members since Plaintiffs and all members of the Class

2   suffered damages as result of Defendant's concealment and wrongful conduct set forth herein.

3        59.     Adequacy: As required by Fed. R. Civ. P. 23(a)(4), Plaintiffs will fairly and

4   adequately protect the interests of the members of the Class. Plaintiffs have no interests

5   adverse or antagonistic to those of the Class and has retained counsel competent and

6   experienced in class action litigation who will zealously prosecute this matter on behalf of the

7   Class to its conclusion

8        60.     Superiority: As required by Fed. R. Civ. P. 23(b)(3), the nature of this action

9   makes the use of class action adjudication superior to other methods. A class action will

10   achieve economies of time, effort, and expense as compared with separate lawsuits, and will

11   avoid inconsistent outcomes because the same issues can be adjudicated in the same manner

12   and at the same time for the entire class.

13        61.     Defendant keeps extensive computerized records of its customers. Defendant

14   has one or more databases through which a significant majority of Class members may be

15   identified and ascertained, and it maintains contact information, including email and home

16   mailing addresses, through which notice of this action could be disseminated in accordance

17   with due process requirements.

18        62.     Class certification of Plaintiffs' claims is also appropriate pursuant to Fed. R.

19   Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable

20   to Plaintiffs and the Class, making appropriate both declaratory and injunctive relief with

21   respect to Plaintiffs and the Class.

22                        **TOLLING OF THE STATUTE OF LIMITATIONS**

23        63.     Nissan has actively engaged in misleading and dishonest conduct relating to its

24   failure to identify all of the parts and labor that should be covered under the California

25   California Code of Regulations regarding the California Emissions Warranty. Despite acting

26   diligently, Plaintiff and Class members lacked the resources and had no realistic ability to

27   identify the specific parts and labor that should be covered. Plaintiff and Class members cannot

28   be reasonably expected on their own to learn or discover what parts and labor should be covered

under the California Emissions Warranty. Therefore, the discovery rule is applicable to the claims asserted by Plaintiff and Class members, and the statute of limitations for bringing the claims set forth herein should be tolled.

64.     Nissan has actual and constructive knowledge that it is violating California law by failing to identify all of the parts and labor that should be covered under the California Emissions Warranty. Nissan has concealed from Plaintiff and Class members that Nissan is violating California law as set forth herein. Any applicable statute of limitation is tolled by Nissan's knowledge, active concealment, and wrongful conduct set forth herein. Nissan is further estopped from relying on any statute of limitation because of its concealment set forth herein.

## FIRST CAUSE OF ACTION

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

65.     Plaintiff re-alleges and incorporates by reference each allegation set forth above.

66.     California Business and Professions Code section 17200, *et seq.* (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Nissan has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

67.     The UCL imposes strict liability. Plaintiff need not prove that Nissan intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

68.     Nissan is a "person" as defined by Business & Professions Code § 17201.

69.     As a direct and proximate result of Nissan's acts and practices in violation of the UCL, Plaintiff and members of the Class have suffered injury in fact and lost money or property as set forth above and will continue to do so.

### Unlawful Prong

70.     A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including the standard of professional conduct.

71.     The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

72.     Nissan's conduct is unlawful because it violates the California Code of Regulations, including the requirement under the California Code of Regulations, by failing to provide proper coverage under the California Emissions Warranty.

73.     Nissan's conduct violates California Code of Regulations section 2037(c) and 2038(c) because Nissan fails to identify the transmissions as parts that should be covered under the 15-year or 150,000-mile California Emissions Warranty.

74.     Nissan's conduct is unlawful because it fails on a systemic and classwide basis to provide coverage for all transmissions installed in the Class Vehicles for 15-years or 150,000-miles, as required pursuant to CCR Sections 1962.1, 2035, 2037, and 2028.

75.     Nissan's' acts of unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

### **Unfair Prong**

76.     An act or act or practice is unfair if the customer injury is substantial, is not outweighed by any countervailing benefits to customers or to competition and is not an injury the customers themselves could reasonably have avoided. An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to customers. An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory provisions. Nissan's conduct violates all of these definitions.

77.     As alleged above, Nissan engages and has engaged in a systematic business practice of failing to identify for customers and its factory authorized repair facilities that the transmissions installed in the Class Vehicles are covered the California Emissions Warranty. Nissan does this in an effort to reduce the amount of money that Nissan spends on warranty-related repairs knowing that it would be very difficult if not impossible for most customers to

discover this unlawful conduct. If Nissan complied with California law and properly identified that the transmissions installed in the Class Vehicles should be identified as covered under the 15-years or 150,000-miles California Emissions Warranty, then Nissan dealerships would properly provide warranty coverage for said parts.

78.     Further, Nissan's conduct is unfair because it refuses to provide warranty coverage for the transmissions installed in the Class Vehicles pursuant to the California Emissions Warranty for 15-years or 150,000-miles for the sole purpose of wrongfully limiting its warranty claims, with no regard for the fact that the public is being forced to pay for repairs which should be covered under the 15-year or 150,000-mile California Emissions Warranty. Plaintiff and members of the Class have wrongfully been denied warranty coverage at service centers throughout California and have suffered injury in fact and a loss of money or property as a result of Nissan's unfair business acts and practices as set forth in detail.

79.     Nissan's failure to properly identify that the transmissions should have been covered under the 15-year or 150,000-mile California Emissions Warranty, is a uniform, and systematic statewide business practice on the part of Nissan to minimize the amount of money that Nissan has to pay out in warranty claims. This conduct violates California law.

80.     All of the acts and practices of Nissan as described in this complaint constitute "unfair" business acts and practices. A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. Plaintiff has suffered injury in fact and a loss of money or property as a result of Nissan's unfair business acts and practices as set forth herein in detail. It is Plaintiff's information and belief that Class members have also suffered injury as a result of Nissan's wrongful conduct.

81.     As a direct and proximate result of Nissan's acts and practices in violation of the UCL, Plaintiff and members of the Class have paid out of pocket to repair or replace emissions components that should have been covered by Nissan under the 15-year or 150,000-mile California Emissions Warranty. Forcing customers to pay out of pocket to repair or replace vehicle components that should be covered under warranty is clearly unfair.

82.     Nissan's conduct does not benefit customers or competition. Plaintiff and Class members could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial. Nissan's conduct only benefits Nissan, by enabling Nissan to avoid having to pay warranty claims which should be covered by the 15-year or 150,000-mileCalifornia Emissions Warranty.

83.     The gravity of the consequences of Nissan's conduct as described above outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous, and offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, or is substantially injurious to the public, for the reasons set forth above.

84.     Nissan's conduct also offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding California's Emission Control System Warranty Requirements, or is substantially injurious to the public, for the reasons set forth above.

85.     To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to Nissan's justification and motives for its conduct, and as to the impact of Nissan's conduct on Plaintiff and Class members.

86.     Nissan's acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

**Deceptive Prong**

87.     Nissan engages and has engaged in a systematic business practice of refusing to provide coverage for the transmissions installed in the Class Vehicles pursuant to the California Emissions Warranty for 15-years or 150,000-miles, by misrepresenting to its dealerships and Class members which parts are covered, and by wrongfully concealing from Class members and its dealerships which parts and labor should be covered. Nissan does this in an effort to reduce the amount of money that it spends on warranty-related repairs. If Nissan complied with

California law, then Nissan dealerships would properly provide emissions warranty coverage for all of the applicable parts pursuant to the California Emissions Warranty and extended coverage for 15-years or 150,000-miles for applicable parts.

88.     Nissan's failure to properly identify that the transmissions installed in the Class Vehicles should be identified as covered under the California Emissions Warranty for 15-years or 150,000-miles is a statewide systematic business practice on the part of Nissan to minimize the amount of money that Nissan has to pay out in warranty claims. This conduct violates California law.

89.     Said conduct is likely to deceive an ordinary customer because Nissan concealed from customers and from each of Nissan's dealerships all of the emissions components that qualify for extended warranty coverage, in an effort by Nissan to minimize the amount of money that Nissan has to pay out in warranty claims. One of the ways Nissan misleads customers relates to the information that Nissan provides to customers in its Owner's Handbook, by failing to classify all of the emissions components as parts that should be covered under the 15-year or 150,000-mile California Emissions Warranty.

90.     In evaluating the repair costs to be charged, Plaintiff justifiably relied on the information in Nissan's Owner's Handbook about the parts covered under the emissions warranty and was deceived and suffered damage as a result of Nissan's wrongful conduct.

91.     Nissan is fully aware of its obligations pursuant to the California Code of Regulations and purports to comply with them. However, in derogation if its legal obligations, Nissan conceals from customers, and from the Nissan dealerships, all of the emissions components that should be covered under the California Emissions Warranty, in order to reduce the amount of money that Nissan has to pay in warranty claims.

92.     Nissan is and was under a duty to disclose to customers and to its dealerships all of the parts which it is required to cover under the 15-year or 150,000-mile California Emissions Warranty, and to provide said coverage.

///

///

93.     Nissan is and was further under a duty to disclose to customers and to its dealerships that the transmissions installed in the Class Vehicles should be covered under the 15-years or 150,000-mile California Emissions Warranty because:

(a)     Nissan is and was in a superior position to know the true state of facts about the duration of the 15-year or 150,000-mile California Emissions Warranty and which parts should be covered as emissions warranted parts;

(b)     Nissan has made partial disclosures about the extent of the 15-year or 150,000-mile California Emissions Warranty;

(c)     Nissan has actively concealed and failed to identify all of the parts that are covered under the 15-year or 150,000-mile California Emissions Warranty; and,

(d)     Members of the Class, including Plaintiff, have suffered actual loss due to Nissan's concealment and false representations.

94.     The facts concealed and not disclosed by Nissan to Plaintiff and members of the Class are material. Had Plaintiff and members of the Class known the true extent of the 15year or 150,000-mile California Emissions Warranty, and had Nissan been truthful to its dealerships and members of the Class with regard to identifying all of the parts and repairs that are covered under the 15-year or 150,000-mile California Emissions Warranty, Plaintiff and members of the Class would have been able to avoid spending money in order to repair Nissan vehicles sold and leased in California. As a result, Plaintiff and members of the Class have suffered damage.

95.     Nissan continues to conceal the extent of the 15-year or 150,000-mile California Emissions Warranty in order to minimize the amount of money that Nissan spends on warranty related repairs.

96.     Furthermore, Nissan has refused to, and continues to refuse to provide 15-year 150,000-mile California Emissions Warranty coverage relating to the transmissions installed in the Class Vehicles under said warranty pursuant to California law. This refusal is unfair and unlawful.

///

///

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of itself and all others similarly situated, prays for relief and judgment against Nissan as follows:

1.      For an order certifying this case as a class action, appointing Plaintiff as the representative of the Class, and appointing counsel for Plaintiff as Class Counsel;

2.      That the Court declare, adjudge and decree that that Nissan is financially responsible for notifying all Class members about the wrongful conduct set forth herein;

3.      That the Court declare, adjudge and decree that that Nissan's failure to identify that the transmissions should be covered pursuant to the California Emissions Warranty, constitutes an unfair and unlawful business practice in violation of California Business and Professions, Civil Code sections 17200, *et seq.*;

4.      For an order enjoining Nissan from further deceptive distribution, sales, and lease practices, compelling Nissan to properly and fully identify that the transmissions are covered pursuant to the California Emissions Warranty; and to reimburse both Plaintiff and Class members for the money wrongfully paid by Plaintiff and Class members relating to these repairs which should have been covered by Nissan under the California Emissions Warranty;

5.      For an award to Plaintiff and Class members of compensatory and statutory damages as appropriate, including interest, in an amount to be proven at trial;

6.      For an award to Plaintiff and Class members of any repair costs they are owed;

7.      For a declaration that Nissan must disgorge, for the benefit of Plaintiff and Class members, all or part of the ill-gotten profits it received as a result of the wrongful conduct set forth herein, or make full restitution to Plaintiff and Class members;

8.      For the appointment of a receiver as necessary to receive, manage and distribute any and all funds disgorged from Nissan and determined to have been wrongfully acquired by Nissan as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

9.      For an award of attorneys' fees and costs, as allowed by law;

10.      For an award of attorneys' fees and costs pursuant to California Code of Civil

Procedure § 1021.5;

     11.    For an award of pre-judgment and post-judgment interest;

     12.    For leave to amend the Complaint to conform to the evidence produced at trial; and,

     13.    For all other relief as may be appropriate under the circumstances.

Dated: November 22, 2021                 Respectfully submitted,

                             **THE LAW OFFICE OF ROBERT L. STARR**

By: _____
                    Robert L. Starr

                    *Attorneys for Plaintiff*

Exhibit 1

State of California
AIR RESOURCES BOARD

**PZEV 15/150k Warranty Issue**

**Background:**

The Air Resources Board received a consumer complaint regarding a 2007 Nissan Altima partial zero emissions vehicle (PZEV) with 122,232 miles.  The complaint was regarding Nissan's denial of warranty coverage for a transmission replacement.  The transmission needed to be replaced because of a malfunctioning pressure control solenoid (indicating imminent transmission failure).  The failure of the component illuminated the vehicle's malfunction indicator light (MIL) and also caused it to fail Smog Check.

- The California Code of Regulations (CCR) Sections 1962.1, 2037(b)(2), and 2038(b)(2) require PZEV vehicles to have both a 15/150k defects and performance warranty.

- Our regulations, along with Nissan's warranty information to its customers, require the transmission problem to be repaired under warranty.

- OBD staff stated that the Nissan transmission replacement should be covered under the PZEV warranty due to the P0745 fault code causing the MIL to illuminate.  Section 1968.2 of the CCR states that the OBD II system shall monitor for malfunction of any electronic powertrain component/system, including solenoids which provide signals to the powertrain control system.  The implications of requiring transmission repair/replacement under the PZEV warranty could lead to strong opposition from Nissan and other manufacturers that would have handled this case in a similar manner.

- The Field Operations & Warranty Section conducted a dealership survey to evaluate the PZEV warranty practices of other manufacturers.  Staff determined that the majority of dealerships were unaware of the PZEV warranty requirements and that many component failures that should have been covered under the PZEV warranty were denied coverage.  This could be due to manufacturers not properly educating and training dealership staff, the software used at dealerships which cannot identify vehicles with PZEV coverage, and certain manufacturers not applying the warranty as defined in the CCR, but rather only applying it on a component specific basis.

**Recommendations**:

- ARB legal review of Nissan's warranty language to determine if transmissions are covered.
- Require Nissan to repair the transmission for the 2007 Altima under the PZEV warranty.
- Issue a MAC notifying all manufacturers of the requirements of the PZEV warranty, and informing them of their obligations to meet those requirements.
- Require all manufacturers to have its dealerships reimburse customers for repairs that should have been covered under the PZEV warranty.

Exhibit 2



**ROB BONTA**
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA  94102-7004

Telephone:  (415) 510-4448
Facsimile:  (415) 703-5480
E-Mail:  Ryan.Hoffman@doj.ca.gov

July 6, 2021

RE:    Declaration of Allen Lyons regarding California's vehicle emissions warranty

Attached to this letter is a Declaration of Allen Lyons, Chief of the Emissions Certification and Compliance Division at the California Air Resources Board (CARB), pertaining to California's vehicle emissions warranty.

CARB provides this Declaration with the understanding that it will be submitted only in litigation centered on California's vehicle emissions warranty.  This Declaration is made for the sole purpose of educating the Courts about CARB's interpretation and implementation of California's warranty requirements, and is not submitted on behalf or in support of any particular party or filing.  The party submitting this Declaration in any court case is not to represent that CARB endorses, supports, or opposes any motion or other filing, or that CARB endorses, supports, or opposes any particular party or position.  This Declaration should not be captioned in a manner that suggests it is in support of or opposition to any court filing.

CARB requests to be notified through its counsel at the California Department of Justice, Office of the Attorney General whenever this Declaration is filed in a court case, and that CARB's counsel be provided with copy of each filing.

Sincerely,

*/s/ Ryan R. Hoffman*
Ryan R. Hoffman
Deputy Attorney General

1    I, Allen Lyons, declare:

2    1.    I am employed by the California Air Resources Board (CARB) as Chief of the Emissions

3    Certification and Compliance Division (ECCD). I have been in this position for two years. Before

4    that, I was a Staff Air Pollution Specialist within ECCD's On-Board Diagnostics Branch. In my

5    role as ECCD Chief, I oversee and manage the certification, on-board diagnostic (OBD), and in-

6    use compliance programs, the latter of which includes warranty. I am familiar with CARB's

7    warranty regulations and how CARB implements those regulations.    In my role as ECCD Chief,

8    I have personal knowledge of the facts and positions set forth below and, if called as a witness,

9    can and would testify thereto under oath.

10    2.    This declaration is made for the sole purpose of educating the Court about CARB's

11    interpretation and implementation of California's warranty requirements, and is not submitted on

12    behalf or in support of any particular party or filing.

13    3.    CARB promulgates regulations governing California's vehicle emissions warranty, which

14    are mainly codified in California Code of Regulations, title 13, sections 1900, 1962, 1962.2, and

15    2035 et seq.

16    4.    CARB's vehicle emissions warranty provisions apply to all California-certified 1979 and

17    subsequent model motorcycles, passenger cars, light-duty trucks, medium-duty vehicles, and

18    heavy-duty vehicles registered in California, regardless of their original point of registration; and

19    all California-certified motor vehicle engines used in such vehicles. (Cal. Code Regs., tit. 13, §§

20    2035, subd. (b).)

21    5.    CARB's vehicle emissions warranty provisions apply to an applicable vehicle, engine, or

22    part over a specified number of years and miles from the date that the vehicle is delivered to the

23    ultimate purchaser, as spelled out in CARB regulations, depending on the emission standard to

24    which the vehicle is certified. (Cal. Code Regs., tit. 13, §§ 2035, subd. (c)(3), 2037(a).) This is

25    known as the warranty period. (Cal. Code Regs., tit. 13, § 2035, subd. (c)(3).)

26    6.    A part subject to California's vehicle emission warranty is called a warranted part.

27    California Code of Regulations, title 13, section 2035 defines a warranted part as:

28    ///

1

(a)    For 1990 and subsequent model year passenger cars, light-duty trucks, and medium duty vehicles produced before January 24, 1991, any emission-related part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which is included on the "Emissions Warranty Parts List" required by section 2036(f) and approved for the vehicle or engine by the Executive Officer;

(b)    For 1990 and subsequent model year passenger cars, light-duty trucks, and medium-duty vehicles other than those identified in (a), above, any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards;

(c)    For heavy-duty vehicles certified to the GHG emission standards of California Code of Regulations, title 71, section 95663, any part included in 40 CFR 1037.102, as amended on October 25, 2016; and

(d)    For 2022 and subsequent model year diesel-powered heavy-duty vehicles greater than 14,000 pounds GVWR which are equipped with 2022 and subsequent model year heavy-duty diesel engines certified on only diesel fuel, and the 2022 and subsequent model year heavy-duty diesel engines certified on only diesel fuel in such vehicles, any part that:

        i.    affects any regulated emission of criteria pollutants from a motor vehicle or motor vehicle engine that is subject to California emission standards, including, at a minimum, those parts that are contained in the "Emissions Warranty Parts List" required by section 2036(f), and

        ii.    is installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or in a warranty repair.

7.    Warranted parts include any components that can or are required to illuminate the OBD Malfunction Indicator Light (MIL) in the event of a malfunction, even if the primary function of the component is not emission control, within the warranty period. (Cal. Code Regs., tit. 13, §

1   2037, subd. (b)(2).) The MIL is a light located on the driver's side instrument panel that, when

2   illuminated, is amber in color and displays "Check Engine/Powertrain," "Service

3   Engine/Powertrain Soon," or the International Standards Organization (ISO) engine symbol; the

4   MIL illuminates to notify the driver of detected malfunctions of OBD-monitored emissions

5   systems on the vehicle. (Cal. Code Regs., tit. 13, § 1968.2, subds. (a), (d)(2.1.1) & (2.2.).)

6   8.      One specific type of warranted part is an "emissions-related part." (Cal. Code Regs., tit. 13,

7   § 2035, subd. (c)(2)(B).) An "emissions-related part" is defined in California Code of

8   Regulations, title 13, section 1900, subdivision (b)(3), as

9                any automotive part, which affects any regulated emissions from a motor vehicle

10               which is subject to California or federal emission standards. This includes, at a

11               minimum, those parts specified in the "Emissions-Related Parts List," adopted by the

12               State Board on November 4, 1977, as last amended June 1, 1990.

13  9.      Another specific type of warranted part is a "high-priced part." A "high-priced warranted

14  part" is:

15        (a)    For 1990 through 2007 model year vehicles, parts that are included on the Board's

16               "Emissions Warranty Parts List" as last amended on February 22, 1985, and that have

17               an individual replacement cost at the time of certification exceeding the cost limit

18               defined in California Code of Regulations, title 13, section 2037, subdivision (c)(3);

19               and

20        (b)    For 2008 and subsequent model year vehicles, parts that are subject to coverage as a

21               warranted part in California Code of Regulations, title 13, section 2037, subdivision

22               (b)(2), and that have an individual replacement cost at the time of certification

23               exceeding the cost limit defined in section California Code of Regulations, title 13,

24               section 2037, subdivision (c)(3).

25  CARB regulations define the replacement cost as the retail cost to a vehicle owner, which

26  includes the cost of the part, labor, and standard diagnosis, in the highest-cost metropolitan area

27  of California. (Cal. Code Regs., tit. 13, § 2037, subd. (c)(2). CARB identifies the highest-cost

28  metropolitan area of California applicable to specified vehicle model years in Manufacturers

3

1    Advisory Correspondences it issues periodically. (*See, e.g.,* CARB Manufacturers Advisory

2    Correspondence No. 2021-01, at p. 2.)

3    10.    For each vehicle test group for which a manufacturer submits an application for

4    certification to CARB, a manufacturer must identify the "high-priced" warranted parts on the

5    vehicles in the test group, as well as specified supporting documentation. (Cal. Code Regs.,

6    tit. 13, § 2037, subds. (c)(1) & (5).) CARB may then "reject or require modification of the

7    manufacturer's list of "high-priced" warranted parts to ensure that such list includes all emission-

8    related parts whose replacement cost exceeds the cost limit" in California Code of Regulations,

9    title 13, section 2037, subd. (c)(3). (Cal. Code Regs., tit. 13, § 2037, subd. (c)(6).)

10    11.    When calculating the cost of labor portion of the replacement cost equation, in order to

11    determine if a part is a "high-priced" warranted part for the purposes of California Code of

12    Regulations, title 13, section 2037, subdivision (c), manufacturers first calculate the amount of

13    time it would take to diagnose and repair or replace the part (the labor hours). A dollar amount is

14    then attributed to the number of labor hours to come up with a cost of labor for each part. In doing

15    this, manufacturers should use the labor hours and associated costs that would be charged to

16    consumers to perform any required diagnosis and repairs to or replacement of the part, not the

17    labor hours that manufacturers' service dealerships are allowed to charge manufacturers.

18    12.    The repair or replacement of warranted parts still within the warranty period must be

19    performed at no charge to the vehicle or engine owner, except under circumstances specified in

20    the warranty regulations. (Cal. Code Regs., tit. 13, § 2037, subd. (d)(4).) Manufacturers may not

21    deny a warranty claim that would otherwise be covered under the California vehicle emissions

22    warranty requirements unless the manufacturer can prove both of the following:

23        (a)    the vehicle or engine has been abused, neglected, improperly maintained, or has

24            unapproved modifications, and

25        (b)    that such abuse, neglect, improper maintenance, or unapproved modification was the

26            direct cause of the need for the repair or replacement of the part.

27    ///

28    ///

4

1   (Cal. Code Regs., tit. 13, §§ 2037, subd. (i), 2039.) The fact that a vehicle has a salvage title, that

2   a vehicle was sold for salvage purposes, or that a vehicle was declared a total loss does not, by

3   itself, void the applicable California vehicle emissions warranty.

4

5   I declare under penalty of perjury under the laws of the State of California that the foregoing is

6   true and correct, and that this declaration was executed by me on this sixth day of July, 2021, in

7   Surprise, Arizona.

8

9                                                                   Allen Lyons

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 3

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE**

**NOTICE OF PROPOSED SETTLEMENT**

IF YOU PURCHASED OR LEASED A 2013-2017 NISSAN SENTRA, A 2014-2017 NISSAN VERSA NOTE, OR A 2012-2017 NISSAN VERSA EQUIPPED WITH A CVT, YOU MAY QUALIFY FOR BENEFITS FROM A CLASS ACTION SETTLEMENT.

**You should read this Notice carefully because it may affect your legal rights.**

*A federal court has ordered this Notice.  It is not from a lawyer, and you are not being sued.*

- This Settlement resolves a lawsuit about the continuously variable transmission ("CVT") in the 2013-2017 Nissan Sentra, 2014-2017 Nissan Versa Note, and 2012-2017 Nissan Versa vehicles ("Class Vehicles").

- The Settlement will provide (1) an extension of the Nissan New Vehicle Limited Warranty for current owners and lessees of Class Vehicles; (2) reimbursement for Class Members who paid for qualifying repairs that would have been covered by the warranty extension; (3) a Voucher towards the purchase or lease of a new Nissan or Infiniti vehicle at an authorized Nissan or Infiniti dealer for former owners of Class Vehicles who meet the requirements of the Settlement Agreement; and (4) an expedited resolution program through the BBB if you claim Nissan breaches the warranty extension.

- Your legal rights are affected whether or not you act.  ***Please read this Notice carefully.***

**Your Rights and Choices:**

| You may: | Summary: | Read more: | Deadline: |
|---|---|---|---|
| **Do nothing** | You are included in the class and, if the Settlement is approved, you will automatically receive a 24 month or 24,000 mile extension (whichever occurs first) of the warranty on the transmission of your Class Vehicle; reimbursement for replacement of or repair to the transmission, if you submit a Claim Form and qualify; or a Voucher towards the purchase or lease of a new Nissan or Infiniti vehicle for former owners of Class Vehicles, if you qualify.  The settlement also provides an expedited resolution program through the BBB if you believe Nissan does not comply with the warranty extension. | Pages 4-5 | **Submit your Claim Form by:** |
| **Opt out of the Settlement** | Ask to get out of the Settlement.  You get no Settlement benefits, but keep your right to file your own lawsuit against Nissan. | Pages 5-6 | **Mail your Opt Out Request Postmarked by:** |
| **Object** | Remain a Class Member and tell the Court what you do not like about the Settlement.  You will still be bound by the Settlement if the Court approves it. | Pages 6-8 | **Objections Filed by:** |
| **Stay in the class and hire your own attorney** | If you want your own attorney to represent you, you must pay for him or her yourself.  Your attorney must file a Notice of Appearance. | Page 8 | **Notice of Appearance Filed by:** |

*No Settlement benefits will be distributed unless the Court approves the Settlement and it becomes final.*

| Table of Contents |
| --- |

**Basic Information**

1.    What is this lawsuit about?
2.    Why is the lawsuit a class action?
3.    Why is there a Settlement?
4.    What is the Effective Date of this Settlement?

**Who is in the Settlement**

5.    How do I know if I am part of the Settlement?

**The Settlement Benefits – What You Will Get**

6.    What are the benefits of this Settlement?
7.    What if my car is more than 84 months old or has more than 84,000 miles on it?
8.    What if I have not repaired my car, but a Nissan dealer has diagnosed and recommended a replacement of or repair to the transmission?
9.    Am I giving anything up in return for my benefit?
10.   What if I have a claim related to my transmission or the Extended Warranty in the future?

**How to Get a Benefit**

11.   What do I need to do to get the benefits of this Settlement?

**Your Rights – Getting Out of the Settlement**

12.   Can I get out of the Settlement?
13.   How can I exclude myself from the Settlement?

**Your Rights – Objecting to the Settlement**

14.   Can I tell the court I do not like the Settlement?
15.   How can I object to the Settlement?
16.   What is the difference between excluding and objecting?  Can I do both?

**Your Rights – Appearing at the Hearing**

17.   Can I appear at the Settlement hearing?

**The Lawyers Representing You**

18.   Do I need to hire my own attorney?
19.   How much is Class Counsel being paid?

**Final Approval of the Settlement**

20.   When will the Settlement become final?
21.   What happens if the Settlement is not approved?

**If You Do Nothing**

22.   What if I do not do anything?

**More Information**

23.   Where can I get more information?

| **Basic Information** |
|---|

### 1.  What is this lawsuit about?

In this lawsuit called [Case Name], Case No. 3:18-cv-00588, pending in the United States District Court for the Middle District of Tennessee, Nashville Division, a number of individuals on behalf of themselves and all current and former owners and lessees of 2013-2017 Nissan Sentra, 2014-2017 Nissan Versa Note, and 2012-2017 Nissan Versa vehicles equipped with CVTs ("Class Vehicles"), allege that the Class Vehicles have a defective continuously variable transmission ("CVT") which can lead to poor transmission performance or failure.  The Plaintiffs brought claims against Nissan North America, Inc. ("Nissan or NNA") for breach of express warranty, breach of implied warranty, unjust enrichment and violation of various State consumer protection statutes.  They also sought various injunctive remedies and damages.  The people who sued are called the Plaintiffs. The company they sued, Nissan, is called the Defendant.

Nissan has and continues to deny all of Plaintiffs' claims related to the CVT in their vehicles, denies all allegations of wrongdoing, fault, liability or damage of any kind to Plaintiffs or the Settlement Class, denies that it acted improperly or wrongfully in any way, and believes that this litigation is without merit.

### 2.  Why is the lawsuit a class action?

In a "class action lawsuit," one or more people called "Class Representatives" sue on behalf of people who allegedly have similar claims.  The people together are a "Class" or "Class Members."  The Court preliminarily has decided that this lawsuit can be a class action for settlement purposes.  However, final certification of the Settlement Class will depend on the Court granting final approval of the Settlement.  This means that, if the Settlement does not receive final approval by the Court, then Class Members will not get benefits under this Settlement, and Plaintiffs will need to go back to Court to seek to certify a class and prove their case through trial even if a class is certified.

### 3.  Why is there a Settlement?

Plaintiffs believe that their case is meritorious, yet they have agreed to this Settlement because, if it is approved, it provides benefits to the Class, while avoiding risks associated with further litigation and trial.

Nissan believes the lawsuit has no merit, but nevertheless is willing to enter into this Settlement as a further commitment to its customers, to provide extra peace of mind to its customers, and to end further litigation, which could be protracted, burdensome and expensive.

The Court has not decided who is right or wrong in this lawsuit.  This proposed Settlement is not, and should not be considered as, evidence of Nissan's admission or concession of any fault, wrongdoing or liability whatsoever, nor a concession by Plaintiffs that their suit was meritless.

### 4.  What is the Effective Date of this Settlement?

The Effective Date of this Settlement is the date when the Settlement becomes final, which is sixty-one (61) days after the date when the Final Order and Judgment in this Lawsuit is entered, unless there is an appeal.  If there is an appeal, the Effective Date will be the date on which (a) all such appeals have been dismissed; or (b) the appropriate Court of Appeals has entered a final judgment affirming the Final Order and Judgment of the Court, which (i) is no longer subject to any further appellate challenge, or (ii) has been affirmed by the United States Supreme Court, whichever is earlier.

For more information regarding final approval of the Settlement, see Questions 20 and 21.

| **Who is in the Settlement** |
|---|

### 5.  How do I know if I am part of the Settlement?

You are a Class Member and part of the Settlement if you purchased or leased in the United States or its territories, including Puerto Rico, a 2013-2017 Nissan Sentra, 2014-2017 Nissan Versa Note, and 2012-2017 Nissan Versa vehicle equipped with a CVT.

3

Excluded from the Settlement Class are: (1) Nissan North America, Inc. ("NNA"), any entity or division in which NNA has a controlling interest, its/their legal representatives, officers, directors, assigns and successors; (2) any judge to whom this case is assigned and the judge's clerks and any member of the judge's immediate family and any judge of the Sixth Circuit Court of Appeals; and (3) government purchasers and lessees.

| **The Settlement Benefits – What You Will Get** |
|---|

**6.    *What are the possible benefits of this Settlement?***

If you are a Class Member, you could receive one of the following benefits if the Settlement is approved:

(1) **Warranty Extension.**  Nissan will extend the terms of the Nissan New Vehicle Limited Warranty for the transmission assembly (including the valve body and torque converter) and Automatic Transmission Control Unit ("ATCU") in all Class Vehicles by twenty-four (24) months or twenty-four thousand (24,000) miles, whichever occurs first (the "Warranty Extension").  The Warranty Extension will be subject to the terms and conditions of the original New Vehicle Limited Warranty applicable to the Class Vehicle.

(2) **Reimbursement for Replacement of or Repair to Transmission Assembly or ATCU.**  Nissan will reimburse Class Members for parts and labor actually paid by the Class Member for qualifying repairs involving the replacement of or repair to the transmission assembly or ATCU of their Class Vehicle if the work was done after the expiration of the powertrain coverage under the original New Vehicle Limited Warranty but within the durational limits of the Warranty Extension.  If the replacement or repair was performed by a Nissan dealer, the full amount the Class Member paid will be reimbursed.  If the repair or replacement was performed by a non-Nissan automotive repair facility, Nissan will reimburse up to $4,750 for that repair or replacement.  In both cases, the replacement or repair must have occurred on or before the Class Vehicle has been in service for eighty-four (84) months or been driven for eighty-four thousand (84,000) miles, whichever occurs first.  If you paid for more repairs on more than one occasion, you can be reimbursed for all qualifying repairs subject to the above limits. For more information, see Question 8 below.

(3) **Voucher Towards Purchase or Lease of a New Vehicle.**  Former owners of Class Vehicles who had two (2) or more replacements or repairs to the transmission assembly or ATCU during their ownership experience (as reflected by NNA warranty records) are eligible for a Voucher in the amount of $1,000 for either a purchase or lease of a single new Nissan or Infiniti vehicle.  Prior software updates and/or reprogramming do not count as a prior repair.  The election to apply the Voucher toward the purchase or lease of a single new Nissan or Infiniti vehicle must be exercised within nine (9) months of the Effective Date of this Settlement.  The Voucher is not transferable.  Class Members eligible for a Voucher but also eligible for reimbursement of a qualifying repair must elect either to receive the Voucher or to receive reimbursement; you cannot receive both.

**7.    *What if my car is more than 84 months old or has more than 84,000 miles on it?***

If you paid out of pocket for parts and labor for replacement of or repair to the transmission assembly or ATCU by a Nissan dealer or other non-Nissan automotive repair facility prior to your vehicle being in service for eighty-four (84) months or eighty-four thousand (84,000) miles, you may submit a claim for reimbursement.  See Question 11 for information on how to submit a claim.

**8.    *What if I have not repaired my car, but a Nissan dealer has diagnosed and recommended a replacement of or repair to the transmission?***

If a Nissan dealer diagnosed and recommended the replacement or repair of your transmission assembly or ATCU *before* your Class Vehicle had been in service for eighty-four (84) months or been driven for eighty-four thousand (84,000) miles (whichever occurs first), and you pay to have that replacement or repair performed before the vehicle has been driven 90,000 miles and no later than [insert 90 days after Notice Date], then, if you submit a valid claim, you would be eligible for reimbursement of the transmission repair or replacement costs, subject to the cap of $4,750 if the work was done by non-Nissan automotive repair facility.  Repairs made after 90,000 miles or after [insert 90 days after Notice Date], whichever occurs first, are not eligible for reimbursement.

**9.    *Am I giving anything up in return for my benefit?***

Unless you get out of the Settlement (which is called "excluding yourself" or "opting out"), you are part of the Settlement Class. By staying part of the Settlement Class, Court orders will apply to you and you will give Nissan, Nissan-related companies and the selling or leasing dealer a "release." This release means you cannot sue or be part of any other lawsuit against the Defendant, its related companies or the selling or leasing dealer based upon or in any way related to transmission design, manufacturing, performance, or repair of Class Vehicles' CVT. The specific claims and parties you will be releasing are described in full detail in Paragraphs 34, 35, 102, and 104 of the Settlement Agreement, available at www._____.com.

### 10. What if I have a claim related to my transmission or the Extended Warranty in the future?

If, in the future, you have a claim for breach of the extended warranty related to your transmission, based entirely on transmission performance issues, repairs or repair attempts, or any other conduct or events that occur after the [Notice Date], that claim is not released as a part of this Settlement. If you experience transmission problems after [Notice Date] and within the Warranty Extension period, you must first present your vehicle to Nissan for repairs and request warranty coverage. If you have a dispute with Nissan regarding application of the Extended Warranty or its repairs under the warranty, you must first attempt to resolve the dispute through the BBB AUTO LINE dispute resolution program which is independently operated by the council of Better Business Bureau, Inc. ("BBB"). No lawsuit may be filed before a decision by the BBB AUTO LINE.

| **How to Get a Benefit** |
| --- |

### 11. What do I need to do to get the benefits of this Settlement?

To remain a Class Member and obtain the Warranty Extension you do not have to do anything.

Class Members who believe they are eligible to receive reimbursement for transmission repair or replacement (described in Questions 6-8) must fill out and send to the Settlement Administrator a Claim Form. The Claim Form may be obtained at www._____.com or by calling the Settlement Administrator at _____. The completed Claim Form must be sent to the Settlement Administrator by mail at the address below or via the settlement website by [insert 90 days after date of this Notice] or within thirty (30) days after the date of the repair to your vehicle, whichever is later.

> Nissan CVT Litigation Settlement Administrator
> P.O. Box _____
> _____

Upon receiving a Claim Form from a claimant, the Settlement Administrator will review the documentation and confirm or deny the Class Member's eligibility for reimbursement.

If you qualify for a $1,000 Voucher for purchase or lease of a single new Nissan or Infiniti vehicle, you will be notified by the Settlement Administrator. To apply the Voucher towards the purchase or lease of a single new Nissan or Infiniti vehicle, qualified individuals must visit an authorized Nissan or Infiniti dealer, provide their name and government-issued ID, and exercise their Voucher within nine (9) months of the Effective Date of this Settlement. The Voucher is not transferable but can be used in addition to all other types of valid discount offers, rebates and incentives. No single Class Member is entitled to more than five (5) Vouchers regardless of the total number of Class Vehicles purchased by that Class Member.

If you believe you are eligible for both a $1,000 Voucher and reimbursement, you must elect on the Claim Form whether to receive reimbursement or a Voucher. You may not receive both benefits.

| **Your Rights – Getting Out of the Settlement** |
| --- |

### 12. Can I get out of the Settlement?

You can get out of the Settlement and the Class. This is called "excluding yourself" or "opting out." If you exclude yourself from the Settlement, you will not be entitled to receive the Settlement benefits. However, you will not be bound by any judgment or settlement of this class action lawsuit and will keep your right to sue Nissan independently over any claims you may have.

### 13. How can I exclude myself from the Settlement?

To exclude yourself from the Settlement, you must mail the Settlement Administrator a Request for Exclusion that contains the following information:

    (1)  The name of the lawsuit: [Case Name], Case No. 3:18-cv-00588;

    (2)  Your full name, current address and telephone number;

    (3)  Your vehicle year and model:

    (4)  Your vehicle's Vehicle Identification Number (VIN);

    (5)  A clear statement of your intent to exclude yourself from the lawsuit (for example, "Please exclude me from the 'CVT Litigation.'"); and

    (6)  Your signature and the date you signed it.

You must send your Request for Exclusion postmarked no later than [insert date], 2019 to the address below:

    Nissan CVT Litigation Settlement Administrator
    P.O. Box _____
    _____

If you do not follow these procedures and deadlines to exclude yourself from the Settlement, you will remain a Class Member and lose any opportunity to exclude yourself from the Settlement. This means that your rights will be determined in this lawsuit by the Settlement Agreement if it receives final approval from the Court.

| **Your Rights – Objecting to the Settlement** |
| --- |

### 14. Can I tell the court I do not like the Settlement?

If you do not exclude yourself from the Settlement Class, you can tell the Court you do not like the Settlement or some part of it by filing an objection to the Settlement. If you object to the Settlement you remain a Class Member and cannot exclude yourself.

### 15. How can I object to the Settlement?

In order to object, you must mail a written objection and any supporting papers to: (1) the Court, (2) Class Counsel, and (3) Nissan's counsel. Your objection must contain the following:

    (1)  The name of the lawsuit: [Case Name], Case No. 3:18-cv-00588;

    (2)  Your full name, current address and telephone number;

    (3)  Whether, as of the date of the written objection, you currently own or lease or whether you previously owned or leased a 2013-2017 Nissan Sentra, 2014-2017 Nissan Versa Note, and 2012-2017 Nissan Versa vehicle equipped with a CVT; the specific model year(s) and the approximate date(s) of purchase or lease (for example, "I currently own a 2013 Nissan Sentra that I purchased in January 2013.");

    (4)  The Vehicle Identification Number (VIN) of your vehicle(s);

    (5)  Current odometer mileage of the vehicle(s) if currently owned or leased;

    (6)  Specific reasons for your objection, including the factual and legal grounds for your position;

    (7)  Whether the objection applies only to you, a specific subset of the class, or to the entire class;

    (8)  A list of any other objections to any class action settlements you have submitted to any court, whether State, Federal, or otherwise, in the United States in the previous five (5) years;

    (9)  Evidence and supporting papers, if any, that you want the Court to consider in support of your objection;

(10) Whether you intend to appear at the Fairness Hearing, and whether you will be represented by separate counsel; and

(11) Your signature and the date of your signature.

You must file your objection with the Court and mail separate copies on Class Counsel and Nissan's counsel by first-class United States Mail, no later than [insert date twenty-eight (28) days prior to the Fairness Hearing].

Your objection must be sent to the Court at the following address:

**United States District Court for the Middle District of Tennessee, Nashville Division**
**[Case Name]**
**Case No. 3:18-cv-00588**
**801 Broadway, Room 874**
**Nashville, TN 37203**

The copies to be served on Class Counsel and Nissan's counsel must be mailed to the following addresses:

**Class Counsel:**

Lawrence Deutsch
Russell D. Paul
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103-6305

Raul Perez
Tarek H. Zohdy
Cody R. Padgett
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, CA 90067

**Counsel for Nissan:**

E. Paul Cauley, Jr.
S. Vance Wittie
DRINKER BIDDLE & REATH LLP
1717 Main Street
Suite 5400
Dallas, Texas 75201

If you timely file an objection, it will be considered by the Court at the Fairness Hearing. You do not need to attend the Fairness Hearing in order for the Court to consider your objection. If you do not comply with these procedures or deadline for objection, you will lose your opportunity to have your objections considered at the Fairness Hearing or otherwise contest the approval of the Settlement or to appeal from any order or judgment entered by the Court in connection with the Settlement.

### 16. What is the difference between excluding and objecting? Can I do both?

Excluding yourself means getting out of the Settlement altogether – you would not be entitled to receive any benefits pursuant to the Settlement, but you will not be bound by the terms of the Settlement. Objecting means remaining in the Settlement, but complaining about some part of it you do not like. You cannot do both.

| **Your Rights – Appearing at the Hearing** |
| --- |

### 17. Can I appear at the Settlement hearing?

7

As long as you do not exclude yourself, you can (but do not have to) participate and speak for yourself in this lawsuit and Settlement. This is called making an appearance. You can also have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you in this lawsuit, you must file a written notice with the Court and serve your notice of intent to appear on the attorneys listed above in Question 15. You must state in that paper, "I intend to appear at the hearing." The notice of intent to appear must be filed and served no later than [insert date], 2019.

| **The Lawyers Representing You** |
|---|

### 18. Do I need to hire my own attorney?

You do not need to hire an attorney, but can if you want to. You, and the entire class, are already represented by a group of attorneys listed below, who are known as Class Counsel. You do not have to pay for Class Counsel's services. You may contact Class Counsel if you have any questions about this Notice or Settlement, **_but please do not contact the Court_**.

**Class Counsel:**

Gary E. Mason
WHITFIELD BRYSON & MASON, LLP
5101 Wisconsin Ave. NW Suite 305
Washington, D.C. 20016

Lawrence Deutsch
Russell D. Paul
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103-6305

Raul Perez
Tarek H. Zohdy
Cody R. Padgett
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, CA 90067

Taylor C. Bartlett
W. Lewis Garrison, Jr.
Christopher B. Hood
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, AL 35203

Natalie Finkelman
James C. Shah
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 E. State Street
Media, PA 19063

Melissa S. Weiner
PEARSON, SIMON & WARSHAW, LLP
800 Lasalle Avenue, Suite 2150
Minneapolis, MN 55402

If you decide to hire your own attorney, you will have to pay for his or her services. Your attorney must file an appearance with the Court no later than [insert date of TBD prior to the Fairness Hearing], and serve a copy on Class Counsel and Nissan's counsel at the addresses provided above in Question 15, postmarked no later than [insert date thirty-five (35) days prior to the Fairness Hearing].

### 19. How much is Class Counsel being paid?

Class Counsel will apply to the Court for reasonable attorneys' fees in a total amount of $6,500,000 for fees and up to a maximum of $100,000 for costs and expenses. Any award of attorneys' fees and costs will be paid by Nissan separately from and in addition to any relief provided to the Settlement Class. Additionally, Class Counsel will apply to the Court for payments of $5,000 each to the eleven (11) Class Representatives for their service to the Class. Any award of payments to the Class Representatives will be paid by Nissan separately from and in addition to any relief provided to the Settlement Class.

| **Final Approval of the Settlement** |
|---|

### 20. When will the Settlement become final?

The Court has preliminarily approved the Settlement provided for in the Settlement Agreement. The Settlement will not take effect unless and until: (1) the Court approves the Settlement after the Final Approval Hearing and (a) a Final Order and

Judgment has been entered by the Court and the applicable period for the appeal of the Final Order and Judgment has expired without any appeals having been filed, or (b) all such appeals have been dismissed; or (2) the appropriate Court of Appeals has entered a final judgment affirming the Final Order and Judgment of the Court, which (a) is no longer subject to any further appellate challenge, or (b) has been affirmed by the United States Supreme Court.

The Court has scheduled a Final Approval Hearing, to be held on _____ at _____ Eastern Time, to decide whether certification of the Settlement Class is proper; whether the Settlement is fair, adequate, and reasonable; and whether the Settlement should be finally approved. In addition, the Court will consider Class Counsel's application for an award of attorneys' fees and reimbursement of expenses. The Court is located at the United States District Court for the Middle District of Tennessee, Nashville Division, Estes Kefauver Federal Building & Courthouse, 801 Broadway, Nashville, Tennessee 37203. The Final Approval Hearing may be rescheduled to a later time without further notice. You may, but do not have to, attend the Final Approval Hearing. If the Court grants final approval to the Settlement and the time to appeal has expired, the Settlement will become final and benefits will be paid or available to the Class.

### 21. What happens if the Settlement is not approved?

If the Court does not approve the Settlement, Class Members will not be entitled to receive the Settlement benefits described in this Notice. It will be as if no Settlement had been reached and no class had been established.

| **If You Do Nothing** |
| --- |

### 22. What if I do not do anything?

If you do nothing, you will be a Class Member. You will be bound by the terms of the Settlement, which means you cannot bring a lawsuit against Defendant for the same claims at issue in this lawsuit. You will receive the Warranty Extension benefit of the Settlement automatically, and if you are eligible, you will also receive the Voucher benefit, but any Reimbursement benefits for which you may qualify can be obtained only by timely submitting a claim form.

| **More Information** |
| --- |

### 23. Where can I get more information?

If you have additional questions regarding this Notice or the Settlement, or if you did not receive Notice in the mail and believe that you may be a member of the Settlement Class, you should contact the Settlement Administrator's dedicated website for this case by visiting www._____.com or calling _____ for more information, or you may communicate directly with Class Counsel by contacting the attorneys listed in Question 18.

This Notice, which has been approved by the Court, is only a summary. If you wish to obtain more detailed information, you may review the Settlement Agreement, which contains the complete terms of the Settlement. The Settlement Agreement, along with the pleadings, records and other papers regarding the lawsuit, are available on the Settlement Administrator's dedicated website for this case (www._____.com) and are on file with the Court and available to be inspected at any time during regular business hours at the Clerk's office.

The Clerk of the Court is located at:

**United States District Court**
**Middle District of Tennessee**
**801 Broadway, Room 800**
**Nashville, TN 37203**

**Please do not contact the Court.**

Date of Notice: _____