**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302
Voice: 818-225-9040
Facsimile: 818-225-9042

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIORNIA

| | |
|---|---|
| LUX GLOBAL AUTO SALES, a California Corporation, and MARIA VELARDE, on behalf of themselves and others similarly situated,<br><br>          Plaintiff,<br><br>          vs.<br><br>NISSAN NORTH AMERICA, INC., and DOES 1 to 10,<br><br>          Defendants. | Case No. 2:21-CV-02157-JAM-AC<br><br>**FIRST AMENDED CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, *ET SEQ.***<br><br><br><br>**JURY TRIAL DEMANDED** |

1    Plaintiffs Lux Global Auto Sales, Inc. and Maria Velarde ("Plaintiffs"), individually and

2    on behalf of all other members of the public similarly situated, bring this action against

3    Defendant Nissan North America, Inc. ("Defendant" or "Nissan"), upon information and belief,

4    except as to its own actions, the investigation of its counsel, and the facts that are a matter of

5    public record, and alleges as follows:

6                                        **INTRODUCTION**

7    1.    This class action arises out of Defendant's failure to comply with the California

8    emissions warranty. Pursuant to the California emissions warranty, Defendant is obligated to

9    provide 8-year or 100,000-mile warranty coverage, with coverage being extended on high

10   mileage in-use testing to 112,5000 miles, for high priced parts, relating to some of the vehicles

11   distributed by Defendant ("Extended Coverage"). This requirement is explained herein and is

12   mandated pursuant to California Code of Regulations ("CCR") Title 13, Section 1961(a)(8),

13   2035, 2037 and 2038, ("California Emissions Warranty"). Defendant is required to provide the

14   Extended Coverage relating to Super Ultra Low Emissions Vehicles ("SULEV"), for which

15   Defendant has received NMOG fleet average credit or vehicle equivalent credits ("CREDIT")

16   from the California Air Resources Board ("CARB"). As a result of Defendant not providing the

17   mandated Extended Coverage, Plaintiffs and members of the Class are paying out of pocket for

18   repairs that should be covered under the California Emissions Warranty. Plaintiffs' claims relate

19   specifically to all Nissan brand SULEV vehicles for which Defendant is not providing the

20   Extended Coverage, and for which the Extended Coverage is required pursuant to the California

21   Emissions Warranty ("Class Vehicles").

22   2.    As will be explained herein, CARB has already determined that transmission

23   defects which cause an illumination of the malfunction indicator lamp ("MIL" or Check Engine

24   Light"), are covered under the California Emissions Warranty. This is because, pursuant to Title

25   13, Section 19682, the MIL is not supposed to illuminate unless the vehicle's onboard

26   diagnostic system ("OBDII") has detected a defect which increases regulated emissions.

27   Furthermore, a defect which would cause illumination of the MIL would result in the vehicle

28   failing a California smog check. Pursuant to the California Emissions Warranty, defects which

increase regulated emissions, defects which cause the MIL to illuminate, and defects which would cause a vehicle to fail a California smog check are covered under the California Emissions Warranty. Defendant has failed to extend this coverage to Plaintiffs and the class members, which is an unlawful business practice.

## BACKGROUND

3.     For decades, Defendant has been in the business of importing and distributing Nissan vehicles to the State of California, with the intent for California customers to purchase Nissan brand vehicles for use in the state of California. As such, the Nissan vehicles have been subject to state and federal regulations regarding both emissions standards and regarding Defendant's obligations to provide customers with warranties relating to emissions parts.

4.     California Code of Regulations section 1961(a)(8), 2035, 2037, and 2038, require that, for SULEV vehicles for which CEDIT is provided, all defects in materials or workmanship that would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, all defects in materials or workmanship that would increase emissions, and all defects in materials or workmanship that would result in the vehicle not being able to pass a California smog check shall be covered under the time period of the Extended Coverage, provided that the cost to diagnose and repair the defects is deemed high priced. The Class Vehicles are all defined as all vehicles which would qualify as SULEV vehicles as defined pursuant to California Code of Regulations 1961(a)(8) for which Defendant has received a CREDIT. The cost to diagnose and repair a transmission defect relating to a Class Vehicle which causes the MIL to illuminate, which causes an increase in regulated emissions and which causes a Class Vehicle to fail a smog check exceeds the high priced threshold for all Class Vehicles.

5.     Defendant fails to comply with these statutory requirements by failing to provide the Extended Coverage for transmission defects which cause illumination of the MIL, which cause an increase in regulated emissions and/or which would cause a vehicle to fail a smog check. The Class Vehicles are defined as all Nissan brand SULEV vehicles for which Defendant has received CREDIT from the state of California, and for which Defendant has failed to provide the Extended Coverage for transmission defects which increase regulated

emissions, cause a MIL to illuminate or would cause Class Vehicles to fail a smog check.

6.     Defendant is engaged in a scheme to limit its warranty exposure under California's emissions warranty requirements in violation of California emissions law by unilaterally defining and wrongfully limiting the parts that should properly be identified as parts covered by the California Emissions Warranty and covered for the Extended Coverage period.

7.     Defendant's California Emissions Warranty coverage and Extended Coverage for the Class Vehicles identifies only a handful of emissions parts that Defendant contends qualify for the Extended Coverage. That list, generated by Defendant, for its own financial benefit to save warranty costs, is woefully inadequate and incomplete and fails to identify, or provide Extended Coverage for, *all* of the emissions related parts that, in fact, qualify for Extended Coverage.

8.     By narrowly self-defining the parts that are required to be covered under the California Emissions Warranty, Defendant is able to reduce the amount of money that Defendant spends on warranty-related repairs, knowing that most if not all dealerships or customers will not investigate or understand what components should actually and correctly be covered under the California Emissions Warranty as required by the CCR.

9.     As a result of Defendant's conduct, Plaintiffs and Class members have paid and are continuing to pay out of pocket for repairs that should be covered under the California Emissions Warranty and under the Extended Coverage.

10.     Plaintiffs' theory does not depend on the premise that CARB was deceived by the information that Defendant submitted, or that CARB ever expressed a concern about Defendant's classification of components as being covered by the California Emissions Warranty and Extended Coverage. Plaintiffs are not accusing CARB of mismanagement or blaming CARB for Defendant's inaccuracy. Defendant alone is responsible for selecting and identifying to CARB the parts that Defendant has unilaterally identified as being covered by the California Emissions Warranty and Extended Coverage, as part of its application for vehicle certification. That list may be correct as far as it goes or as far as CARB may know. But, as Plaintiffs allege, the list of parts Defendant submitted to CARB was incomplete, as

1    evidenced by Plaintiffs' own experience.

2    **JURISDICTION AND VENUE**

3    11.    This Court has diversity jurisdiction over the subject matter of this action

4    pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class are citizens of a state

5    different from that of Defendant; and (ii) aggregating the claims of individual Class members,

6    the total matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests

7    and costs. Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) Defendant is not a state,

8    state official, or other governmental entity against whom the Court may be foreclosed from

9    ordering relief, and (ii) the number of members of the Class in the aggregate exceeds 100.

10    12.    This Court has personal jurisdiction over Defendant because Defendant has

11    sufficient minimum contacts with California, having intentionally availed itself of the California

12    market so as to render the exercise of jurisdiction over it by this District Court consistent with

13    traditional notions of fair play and substantial justice.

14    13.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because some of the

15    acts described below took place in Sacramento.

16    14.    All of the wrongful acts complained of by Plaintiffs occurred in the state of

17    California. With regard to the wrongful conduct complained of by Plaintiff Lux Global Auto

18    Sales, Inc., said conduct occurred in the county of Sacramento. With regard to the wrongful

19    conduct complained of by Plaintiff Maria Velarde, the wrongful conduct occurred in the county

20    of Los Angeles.

21    **PARTIES**

22    15.    Plaintiff Lux Global Auto Sales, Inc., is, and at all times relevant hereto has been,

23    a California Corporation, located at 721 North B Street #33, Sacramento, California 95811.

24    Plaintiff Lux Global Auto Sales, Inc., is located in the county of Sacramento. Plaintiff Lux

25    Global Auto Sales, Inc., is herein referred to as "Lux".

26

27    16.    Plaintiff Maria Velarde is, and at all times relevant here has been, a person

28    residing at 9307 Washburn Road, Apartment 102 Downey, California, 90242. Plaintiff Maria

Velarde is located in the county of Los Angeles. Maria Velarde is also known by her married name Maria Sanchez. Plaintiff Maria Velarde is herein referred to as "Velarde".

17.     Defendant Nissan was and is, upon information and belief, a Delaware corporation, headquartered in Franklin, Tennessee, doing business in the State of California. Defendant sells SULEV Vehicles, including the Class Vehicles, in the State of California.

18.     The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiffs, and therefore Plaintiffs sue such Defendants by such fictitious names. Plaintiffs are informed and believe, and thereon allege, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of Defendant at all relevant times.

19.     Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein. Plaintiffs will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations, when the same have been ascertained. Each reference in this Complaint to "Nissan" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

20.     Plaintiffs reserve the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

## SUBSTANTIVE ALLEGATIONS

*Plaintiff Lux's Vehicle*

21.     On August 21, 2019, Plaintiff Lux purchased a 2014 Nissan Sentra, VIN 3N1AB7AP0EL606771 ("Plaintiff Lux Vehicle") at the Manheim Auction, located at 29900 Auction Court, Hayward, California. The purchase occurred in the county of Alameda, California.

22.     On February 20, 2020, at 82,110 miles, Plaintiff Lux's Vehicle was presented to Nissan of Sacramento, a Nissan Authorized repair facility, for repairs. The complaint was that

FIRST AMENDED CLASS ACTION COMPLAINT

while driving, Plaintiff Lux's Vehicle was juddering and was slow to respond to the accelerator. The dealership confirmed that Plaintiff Lux's Vehicle was juddering as well as slipping under load. The dealership identified fault codes P17F0, P17F1, and P17F4. The dealership recommended replacing the transmission. Plaintiff Lux was denied warranty coverage and advised that Plaintiff Lux would have to pay out of pocket for the repairs. Plaintiff Lux was charged a diagnostic fee of $165.00. Plaintiff Lux paid additional money to have Plaintiff Lux's Vehicle repaired.

23.     Transmission slipping is described as a delay in acceleration when stepping on the gas, and a condition where your engine has to work harder than normal to achieve a certain speed. This condition increases fuel consumption and increases regulated emissions.

24.     There is a generic fault code used by many vehicle manufacturers which is triggered when transmission slipping outside normal operating range is identified by a vehicle's OBDII system. The fault code is P0894. It is alleged on information and belief that the presence of this fault code will trigger the MIL. With regard to the Class Vehicles, Defendant's OBDII system will trigger fault codes P17F0, P17F1, P17F2, P17F3 and/or P17F4 when transmission slipping is detected. Nissan Technical Bulletin NTB18-058d indicates that the MIL will not be illuminated when these fault codes are detected. It is alleged on information and belief that Defendant's OBDII system relating to the Class Vehicles does not comply with California law, because the system fails to illuminate a MIL when excessive transmission slipping, outside of normal operating range, has been detected. As a result, the Class Vehicles will not display a MIL even when a defect is identified which increase regulated emissions.

25.     On information and belief, it is alleged that the defects in the transmission of Plaintiff Lux's Vehicle as identified on February 20, 2020, and the fault codes present, would have caused Plaintiff Lux's Vehicle to fail a smog check.

26.     The defects in Plaintiff Lux's transmission as identified on February 20, 2020 increase regulated emissions.

27.     In summary, although Nissan of Sacramento identified a defect which increased regulated emissions, which caused fault codes that should have triggered a MIL, and which

would have caused Plaintiff Lux's Vehicle to fail a smog check, and even though Plaintiff Lux's Vehicle had not yet been driven 8 years or 100,000 miles, Defendant failed to extend California Emissions Warranty coverage relating to the transmission defect.

28.     Subsequent to the February 20, 2020 visit, Plaintiff Lux made exhaustive attempts to request Defendant provide California Emissions Warranty coverage for the transmission defect, however Defendant refused to provide the coverage, and refused to acknowledge that any of the components of the transmission were covered by the California Emissions Warranty.

*Plaintiff Velarde's Vehicle*

29.     At all times herein relevant, Plaintiff Velarde is and was the owner of a 2013 Nissan Sentra, VIN 3N1AB7AP0DL755762 ("Plaintiff Velarde Vehicle").

30.     In 2019, prior to the Velarde Vehicle being driven for 100,000-miles and prior to the Velarde Vehicle being in service for 8-years, Plaintiff Velarde noticed that that Velarde Vehicle's transmission was not functioning properly. The Velarde Vehicle would shake on acceleration, there was a noticeable hesitation and delay in acceleration, and the Velarde Vehicle exhibited classic symptoms of the transmission slipping. As a result, in October of 2019, Plaintiff Velarde called Defendant's customer service line, and spoke with Andrew (employee identification number 7319395) and Edgar (employee identification number 7319500). Plaintiff Velarde complained about the transmission performance. She was advised that there was no warranty coverage for the transmission and that no assistance would be provided. In response, Plaintiff Velarde demanded that Defendant repurchase the Velarde Vehicle. Defendant refused to take any action. Plaintiff Velarde was provided case number 37485560 relating to her contact with Defendant.

31.     On information and belief, it is alleged that the defects in the transmission of Plaintiff Velarde's Vehicle would have caused Plaintiff Velarde's Vehicle to fail a smog check.

32.     The defects in Plaintiff Velarde's transmission as described by Plaintiff Velarde do increase regulated emissions.

33.    Despite Plaintiff Velarde's complaints regarding the Velarde Vehicle, and despite the fact that the Velarde Vehicle had not yet been driven 8-years or 100,000-miles, Defendant specifically advised Velarde that there was no warranty coverage relating to Velarde's complaints. Furthermore, the written warranty provided by Defendant does not indicate that there is a 8-year 100,000-mile warranty relating to the Velarde Vehicle's transmission.

34.    As a result of Defendant failing to honor its California emissions warranty obligations relating to the Velarde Vehicle, Plaintiff Velarde had the Velarde Vehicle repaired at Hugo's Transmission Parts, located at 1538 West Olympic Boulevard, Montebello, California 90640. Plaintiff Velarde paid thousands of dollars out of pocket to have the transmission repairs performed.

*Common Allegations*

35.    CARB has already confirmed that transmission defects which cause the MIL to illuminate should be covered under the California Emissions Warranty. The reason for this is that transmission defects which cause the MIL to illuminate are by definition defects which either increase regulated emissions or are defects which are causing the OBDII system to not function properly. The OBDII system's purpose as defined by the CCR is to detect defects which increase regulated emissions.

36.    A public records request of CARB was served by Plaintiffs' counsel in February of 2021. In response, among other things, CARB produced a document indicating that CARB had reviewed a customer complaint regarding a 2007 Nissan Altima partial zero emissions ("PZEV") vehicle with 122,232 miles. The customer complaint was regarding Defendant's denial of California Emissions Warranty coverage under the PZEV warranty for a transmission replacement. The PZEV warranty is similar to the Extended Coverage for SULEV vehicles, but the PZEV coverage is longer. The transmission needed to be replaced because of a malfunctioning pressure control solenoid, indicating imminent transmission failure. The failure of the component illuminated the vehicle's MIL and also caused it to fail a smog check. CARB staff stated that the Defendant transmission replacement should be covered under the PZEV

warranty due to the P0745 fault code causing the MIL to illuminate. Section 1968.2 of the CCR states that the OBDII system shall monitor for malfunction of any electronic powertrain component/system, including solenoids, which provide signals to the powertrain control system. In the document produced by CARB, CARB noted that the implications of requiring transmission repair/replacement under the PZEV warranty could lead to strong opposition from Defendant and other manufacturers that would have handled the situation in a similar manner. The document indicated that CARB recommend CARB legal review Defendant's warranty language to determine if transmissions are covered, require Defendant to repair the transmission for the 2007 Altima under the PZEV warranty, issue a memo notifying all manufacturers of the requirements of the PZEV warranty and informing them of their obligations to meet these requirements, and require all manufacturers to have their dealerships reimburse customers for repairs that should have been covered under the PZEV warranty.

37.    The whole purpose of the MIL is to detect if there is a defect which increases regulated emissions. Defendant's OBDII system relating to the Class Vehicles appears to be designed specifically to not report some defects which increase regulated emissions; i.e. transmission slipping.

38.    On July 6, 2021, CARB, through the California Attorney General, provided a declaration to Plaintiffs' counsel, with the understanding that it would be submitted only in litigation centered on California's vehicle emissions warranty. The Declaration was created for the sole purpose of educating the Courts about CARB's interpretation and implementation of California's warranty requirements and was not provided on behalf or in support of any particular party or filing. The cover letter to the declaration stated that a party submitting the Declaration in any court case should not to represent that CARB endorses, supports, or opposes any motion or other filing, or that CARB endorses, supports, or opposes any particular party or position. The cover letter indicated that the declaration should not be captioned in a manner that suggests it is in support of or opposition to any court filing.

39.    The declaration indicated that, "A part subject to California's vehicle emission warranty is called a warranted part. California Code of Regulations, 13 section 2035 defines a

warranted part as… For 1990 and subsequent model year passenger cars, light-duty trucks, and medium duty vehicles other than those identified in (a), above, any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards."

40.     There is no good faith argument that a defect which causes excessive transmission slipping, including but not limited to transmission slipping which is so severe that it triggers a diagnostic fault code, is not a defect which increases regulated emissions. Excessive transmission slipping was present in Plaintiffs' vehicles during the Extended Coverage period. Notwithstanding, Defendant has refused to provide warranty coverage.

41.     But Defendant's wrongful conduct is much more disturbing. Not only has Defendant failed to disclose to its customers that the transmissions installed in the Class Vehicles are covered for 8-years or 100,000-miles, but in response to a series of class action lawsuits relating to certain Defendant transmissions, Defendant has attempted to enter into binding settlement agreements which actually shorten the transmission warranty period for some of the Class Vehicles. These settlement agreements violate the California Emissions Warranty and are not enforceable, because they violate the California emissions laws by actually shortening the warranty coverage from 8-years or 100,000 miles to 7-years or 84,000 miles. But the settlement agreements do serve a valuable benefit to Defendant of providing further misinformation to Defendant's customers in order to undermine customers' ability to obtain proper warranty coverage.

42.     For example, there was an action filed against Defendant entitled *Weckwerth v. Nissan*, 18-cv-00588. This was a lawsuit alleging the transmissions installed in the Weckwerth Class Vehicles, defined as 2013-2017 Nissan Sentras, 2014-2017 Nissan Versa Notes and 2012-2017 Nissan Versas were defective. Some of these vehicles were SULEV vehicles, also included in this action's definition of a Class Vehicle. Plaintiff Lux's vehicle, a 2014 Nissan Sentra, and Plaintiff Velarde's vehicle, a 2013 Nissan Sentra, would be included as a Weckwerth Class Vehicle. The settlement of *Weckwerth v. Nissan* provided a reimbursement

program and a warranty extension, so that the transmission would be covered for 84 months or 84,000 miles, with certain exceptions providing a slightly longer warranty. The import of this settlement for SULEV vehicles is that it actually shortens the warranty for SULEV transmissions by 1 year or 16,000 miles. And even if it was not Defendant's intention to shorten the warranty for SULEV vehicles, Defendant's failure to disclose its warranty obligations relating to SULEV vehicles, coupled with the settlement notice documents in *Weckwerth v. Nissan*, at the very least provide very disturbing and misleading misinformation to customers.

43.     The California Emission Warranty establishes the minimum warranty coverage that Defendant is required to provide to customers relating to Nissan SULEV vehicles for which Nissan has received CREDIT.

44.     Pursuant to California Code of Regulations Section 2035, with regard to 1990 and subsequent model year vehicles, a "warranted part" is defined as "any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards."

45.     Furthermore, California Code of Regulations Section 2037(b) states: "The manufacturer of each motor vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent purchaser that the vehicle or engine is:

> (1)     Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and
>
> (2)     Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years or 50,000 miles, whichever first occurs; and

(3)     Free from defects in materials and workmanship which cause the failure

of a warranted part described in section (c) below for seven years or

70,000 miles, whichever first occurs."

46.     California Code of Regulations Section 2037(c) states:

(1)     Each manufacturer shall identify in its application for certification the

"high-priced" warranted parts which are:

(A)     For 1990 through 2007 model year vehicles: [i] included on the

Board's "Emissions Warranty Parts List" as last amended

February 22, 1985, incorporated herein by reference, and; [ii]

have an individual replacement cost at the time of

certification exceeding the cost limit defined in section (c)(3);

(B)     For 2008 and subsequent model year vehicles: [i] subject to

coverage as a warranted part in section (b)(2) above, and; [ii] have

an individual replacement cost at the time of certification

exceeding the cost limit defined in section (c)(3).

(2)     The replacement cost shall be the retail cost to a vehicle owner and

include the cost of the part, labor, and standard diagnosis. The costs shall

be those of the highest-cost metropolitan area of California.

(3)     The cost limit shall be calculated using the following equation:

Cost limit $\{n\}$ = \$300 x (CPI$\{n\text{-}2\}$)/ 118.3

Cost limit $\{n\}$ is the cost limit for the applicable model year of the

vehicle rounded to the nearest ten dollars.

47.     With regard to SULEV vehicles for which Nissan has received CREDIT, Nissan

is required to provide the Extended Coverage for all high-priced parts covered under the

California Emissions Warranty.

48.     The details of how Defendant applied the California Code of Regulations

formula with respect to the transmissions installed in the Class Vehicles are exclusively within

Defendant's possession. Similarly, the information regarding what other parts satisfied the

California Code of Regulations requirements but were not identified by Defendant as covered under the California Emissions Warranty's Extended Coverage also is in the exclusive possession of Defendant.

49.     Defendant has acted as alleged herein in an effort to reduce the amount of money that Defendant spends on warranty-related repairs, knowing that most if not all dealerships or customers will not investigate or understand what components should actually be covered under the California Emissions Warranty. Defendant's conduct is part of a systematic effort by Defendant to avoid complying with California law. If Defendant complied with the terms of California law by properly identifying all parts that are covered under the California Emissions Warranty, then Nissan dealerships would properly provide warranty coverage for covered all parts, and customers would not have to pay out of their own pocket for said repairs.

50.     Defendant's conduct violates California's unfair business practices statute, California Business and Professions Code sections 17200 *et seq.* (the "UCL").

51.     Plaintiffs and other Class members have suffered damage as a result of Defendant's wrongful, unfair, and unlawful conduct.

52.     Plaintiffs also seek injunctive relief compelling Defendant to properly and fully identify that the transmissions installed in the Class Vehicles should be covered by the California Emissions Warranty and to identify the correct warranty period for the transmissions. Some Class members still own Class Vehicles and in the future will need to repair or replace the transmissions. At this time, with regard to the Class Vehicles, Defendant is refusing to provide the proper Extended Coverage pursuant California Emissions Warranty.

**PLAINTIFFS' CLASS ACTION ALLEGATIONS**

53.     Plaintiffs re-allege and incorporate by reference each allegation set forth above.

54.     Plaintiffs bring this class action pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(2) and (b)(3) on behalf of themselves and members of the Class as defined below.

55.     Excluded from the Class are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate

1  families); and the legal representatives, heirs, successors or assigns of any of the foregoing.

2      56.    All claims alleged herein arise under California law for which Plaintiffs seek

3  relief authorized by California law.

4      57.    The Class Vehicles are defined as all SULEV vehicles distributed by Defendant

5  in California, for which Defendant has received CREDIT from CARB, and for which Defendant

6  has failed to provide the Extended Coverage relating to the transmission. Plaintiffs and members

7  of the Class are paying out of pocket, and being denied warranty coverage, for repairs that

8  should be covered under the California Emissions Warranty.

9      58.    Plaintiffs' proposed class consists of and is defined as follows:

10          All persons in the State of California who have been owners or lessees of Class Vehicles and who have paid for repairs and parts

11          pertaining to defective transmissions that should have been covered under the Extended Coverage (the "Class").

12      59.    As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are questions of law

13  and fact common to the Class, and those common questions predominate over any questions

14  affecting only individual members. Among the common questions of law and fact include:

15      (a)    Whether Defendant has failed, and is failing, to comply with the California

16          Emissions Warranty by failing to provide Extended Coverage for the

17          transmissions installed in the Class Vehicles;

18      (b)    Whether Defendant has failed, and is failing, to identify for customers and

19          dealerships the all of the parts that should be identified as covered under

20          Extended Coverage under the CCR, including but not limited to the transmission;

21      (c)    Whether Defendant has engaged in, and is engaging in, a systematic business

22          practice of intentionally failing to identify all of the parts that should be

23          identified as covered under the Extended Coverage under the CCR relating to the

24          Class Vehicles, including but not limited to coverage of the transmissions.

25      (d)    Whether Defendant has failed, and is failing, to identify all of the parts that

26          should be identified as covered under the Extended Coverage under the CCR, in

27          an effort to reduce the amount of money that Defendant spends on warranty-

28

related repairs relating to the Class Vehicles, including but not limited to coverage of the transmission.

(e)     Whether Defendant's conduct of failing to identify all of the parts that should be identified as covered under the Extended Coverage under the CCR results in Defendant customers suffering financial loss relating to the Class Vehicles, including but not limited to coverage of the transmission.

(f)     Whether Defendant's conduct of failing to identify all of the parts relating to the Class Vehicles, including but not limited to coverage of the transmission, that should be identified as covered under the Extended Coverage under the CCR results in wrongfully minimizing the amount of money that Defendant has to pay out in warranty claims.

(g)     Whether Defendant's conduct of failing to identify all of the parts that should be identified as covered under the Extended Coverage under the CCR violates California law.

(h)     Whether Defendant has engaged in, and is engaging in, unlawful and unfair business practices in violation of California Business & Professions Code section 17200, *et seq.* with regard to Defendant's failure to identify all of the parts covered under the Extended Coverage under the CCR.

(i)     Whether Plaintiffs and Class members are entitled to injunctive relief regarding Defendant's failure to identify all of the parts relating to the Class Vehicles, including but not limited to coverage of the transmission, that should be covered by the Extended Coverage under the CCR.

(j)     The appropriate amount of restitution, or monetary penalties resulting from Defendant's violations of California law.

(k)     Whether Defendant has engaged in, and is engaging, in concealment pertaining to Defendant's failure to identify all of the parts relating to the Class Vehicles, including but not limited to coverage of the transmission, that should be covered under the Extended Coverage under the CCR.

60.     Numerosity: As required by Fed. R. Civ. P. 23(a)(1), the members of the Class are so numerous that joinder of all Class members would be unfeasible and impractical, and the resolutions of their claims through the procedure of a class action will be of benefit to the Parties and the Court. The membership of the entire Class is unknown to Plaintiffs at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

61.     Typicality: As required by Fed. R. Civ. P. 23(a)(3), Plaintiffs' claims are typical of the claims of all Class members since Plaintiffs and all members of the Class suffered damages as result of Defendant's concealment and wrongful conduct set forth herein.

62.     Adequacy: As required by Fed. R. Civ. P. 23(a)(4), Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have no interests adverse or antagonistic to those of the Class and has retained counsel competent and experienced in class action litigation who will zealously prosecute this matter on behalf of the Class to its conclusion

63.     Superiority: As required by Fed. R. Civ. P. 23(b)(3), the nature of this action makes the use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

64.     Defendant keeps extensive computerized records of its customers. Defendant has one or more databases through which a significant majority of Class members may be identified and ascertained, and it maintains contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

65.     Class certification of Plaintiffs' claims is also appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the Class.

**TOLLING OF THE STATUTE OF LIMITATIONS**

66.      Defendant has actively engaged in misleading and dishonest conduct relating to its failure to identify all of the parts and labor that should be covered under the California California Code of Regulations regarding the California Emissions Warranty. Despite acting diligently, Plaintiffs and Class members lacked the resources and had no realistic ability to identify the specific parts and labor that should be covered. Plaintiffs and Class members cannot be reasonably expected on their own to learn or discover what parts and labor should be covered under the California Emissions Warranty. Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and Class members, and the statute of limitations for bringing the claims set forth herein should be tolled.

67.      Defendant has actual and constructive knowledge that it is violating California law by failing to identify all of the parts and labor that should be covered under the California Emissions Warranty. Defendant has concealed from Plaintiffs and Class members that Defendant is violating California law as set forth herein. Any applicable statute of limitation is tolled by Defendant's knowledge, active concealment, and wrongful conduct set forth herein. Defendant is further estopped from relying on any statute of limitation because of its concealment set forth herein.

**FIRST CAUSE OF ACTION**

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

68.      Plaintiffs re-allege and incorporate by reference each allegation set forth above.

69.      California Business and Professions Code section 17200, *et seq*. prohibits "any unlawful, unfair or fraudulent business act or practice." Defendant has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

70.      The UCL imposes strict liability. Plaintiffs need not prove that Defendant intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

71.      Defendant is a "person" as defined by Business & Professions Code § 17201.

72.     As a direct and proximate result of Defendant's acts and practices in violation of the UCL, Plaintiffs and members of the Class have suffered injury in fact and lost money or property as set forth above and will continue to do so.

### Unlawful Prong

73.     A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including the standard of professional conduct.

74.     The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

75.     Defendant's conduct is unlawful because it violates the California Code of Regulations, including the requirement under the California Code of Regulations, by failing to provide proper coverage under the California Emissions Warranty.

76.     Defendant's conduct violates California Code of Regulations section 2037(c) and 2038(c) because Defendant fails to identify the transmissions as parts that should be covered under the Extended Coverage under the CCR.

77.     Defendant's conduct is unlawful because it fails on a systemic and classwide basis to provide coverage for all transmissions installed in the Class Vehicles for the Extended coverage period of time under the CCR.

78.     Defendant's acts of unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiffs also seek attorneys' fees and costs pursuant to, C.C.P. § 1021.5.

### Unfair Prong

79.     An act or act or practice is unfair if the customer injury is substantial, is not outweighed by any countervailing benefits to customers or to competition and is not an injury the customers themselves could reasonably have avoided. An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to customers. An act or practice also is unfair if Plaintiffs' claims are

1    "tethered" to specific constitutional, statutory or regulatory provisions. Defendant's conduct

2    violates all of these definitions.

3          80.     As alleged above, Defendant engages and has engaged in a systematic business

4    practice of failing to identify for customers and its factory authorized repair facilities that the

5    transmissions installed in the Class Vehicles are covered the California Emissions Warranty.

6    Defendant does this in an effort to reduce the amount of money that Defendant spends on

7    warranty-related repairs knowing that it would be very difficult if not impossible for most

8    customers to discover this unlawful conduct. If Defendant complied with California law and

9    properly identified that the transmissions installed in the Class Vehicles should be identified as

10   covered under the Extended Coverage under the CCR, then Nissan dealerships would properly

11   provide warranty coverage for said parts.

12         81.     Further, Defendant's conduct is unfair because it refuses to provide warranty

13   coverage for the transmissions installed in the Class Vehicles pursuant to the California

14   Emissions Warranty for the time period of the Extended Coverage, for the sole purpose of

15   wrongfully limiting its warranty claims, with no regard for the fact that the public is being

16   forced to pay for repairs which should be covered under the Extended Coverage time period.

17   Plaintiffs and members of the Class have wrongfully been denied warranty coverage at service

18   centers throughout California and have suffered injury in fact and a loss of money or property as

19   a result of Defendant's unfair business acts and practices as set forth in detail.

20         82.     Defendant's failure to properly identify that the transmissions should have been

21   covered under the Extended Coverage time period is a uniform, and systematic statewide

22   business practice on the part of Defendant to minimize the amount of money that Defendant has

23   to pay out in warranty claims. This conduct violates California law.

24         83.     All of the acts and practices of Defendant as described in this complaint

25   constitute "unfair" business acts and practices. A business act or practice is "unfair" under the

26   UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the

27   gravity of the harm to the alleged victims. Plaintiffs have suffered injury in fact and a loss of

28   money or property as a result of Defendant's unfair business acts and practices as set forth

herein in detail. It is Plaintiffs' information and belief that Class members have also suffered injury as a result of Defendant's wrongful conduct.

84.     As a direct and proximate result of Defendant's acts and practices in violation of the UCL, Plaintiffs and members of the Class have paid out of pocket to repair or replace emissions components that should have been covered by Defendant under the Extended Coverage time period. Forcing customers to pay out of pocket to repair or replace vehicle components that should be covered under warranty is clearly unfair.

85.     Defendant's conduct does not benefit customers or competition. Plaintiffs and Class members could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial. Defendant's conduct only benefits Defendant, by enabling Defendant to avoid having to pay warranty claims which should be covered under the Extended Coverage time period.

86.     The gravity of the consequences of Defendant's conduct as described above outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous, and offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, or is substantially injurious to the public, for the reasons set forth above.

87.     Defendant's conduct also offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding California's Emission Warranty requirements, or is substantially injurious to the public, for the reasons set forth above.

88.     To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to Defendant's justification and motives for its conduct, and as to the impact of Defendant's conduct on Plaintiffs and Class members.

89.     Defendant's acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiffs also seek attorneys' fees and costs pursuant to, C.C.P. § 1021.5.

**Deceptive Prong**

90.     Defendant engages and has engaged in a systematic business practice of refusing to provide coverage for the transmissions installed in the Class Vehicles pursuant to the California Emissions Warranty for the Extended Coverage time period, by misrepresenting to its dealerships and Class members which parts are covered, and by wrongfully concealing from Class members and its dealerships which parts and labor should be covered. Defendant does this in an effort to reduce the amount of money that it spends on warranty-related repairs. If Defendant complied with California law, then Nissan dealerships would properly provide emissions warranty coverage for all of the applicable parts pursuant to the California Emissions Warranty and provide the Extended Coverage for applicable parts.

91.     Defendant's failure to properly identify that the transmissions installed in the Class Vehicles should be identified as covered under the California Emissions Warranty for the Extended Coverage time period is a statewide systematic business practice on the part of Defendant to minimize the amount of money that Defendant has to pay out in warranty claims. This conduct violates California law.

92.     Said conduct is likely to deceive an ordinary customer because Defendant concealed from customers and from each of Defendant's dealerships all of the emissions components that qualify for extended warranty coverage, in an effort by Defendant to minimize the amount of money that Defendant has to pay out in warranty claims. One of the ways Defendant misleads customers relates to the information that Defendant provides to customers in its Owner's Handbook, by failing to classify all of the emissions components as parts that should be covered under the Extended Warranty time period pursuant to the CCR.

93.     In evaluating the repair costs to be charged, consumers justifiably relied on the information in Defendant's Owner's Handbook about the parts covered under the emissions warranty and was deceived and suffered damage as a result of Defendant's wrongful conduct.

94.     Defendant is fully aware of its obligations pursuant to the California Code of Regulations and purports to comply with them. However, in derogation if its legal obligations, Defendant conceals from customers, and from the Nissan dealerships, all of the emissions

1  components that should be covered under the California Emissions Warranty's Extended

2  Coverage, in order to reduce the amount of money that Defendant has to pay in warranty claims.

3      95.    Defendant is and was under a duty to disclose to customers and to its dealerships

4  all of the parts which it is required to cover under the Extended Coverage time period, and to

5  provide said coverage.

6      96.    Defendant is and was further under a duty to disclose to customers and to its

7  dealerships that the transmissions installed in the Class Vehicles should be covered under the

8  Extended Coverage time period pursuant to the CCR, because:

9      (a)    Defendant is and was in a superior position to know the true state of facts about

10          the duration of the Extended Coverage and which parts should be covered as high

11          priced emissions warranted parts;

12     (b)    Defendant has made partial disclosures about the extent of the California

13          Emissions Warranty;

14     (c)    Defendant has actively concealed and failed to identify all of the parts that are

15          covered under the Extended Coverage pursuant to the CCR; and,

16     (d)    Members of the Class, including Plaintiffs, have suffered actual loss due to

17          Defendant's concealment and false representations.

18     97.    The facts concealed and not disclosed by Defendant to Plaintiffs and members of

19  the Class are material. Had Plaintiffs and members of the Class known the true extent of the

20  Extended Coverage, and had Defendant been truthful to its dealerships and members of the

21  Class with regard to identifying all of the parts and repairs that are covered under the Extended

22  Coverage, Plaintiffs and members of the Class would have been able to avoid spending money

23  in order to repair Nissan vehicles sold and leased in California. As a result, Plaintiffs and

24  members of the Class have suffered damage.

25     98.    Defendant continues to conceal the extent of the Extended Coverage under the

26  CCR in order to minimize the amount of money that Defendant spends on warranty related

27  repairs.

28

99.     Furthermore, Defendant has refused to, and continues to refuse to provide Extended Coverage relating to the transmissions installed in the Class Vehicles under said warranty pursuant to California law. This refusal is unfair and unlawful.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendant as follows:

1.     For an order certifying this case as a class action, appointing Plaintiffs as the representatives of the Class, and appointing counsel for Plaintiffs as Class Counsel;

2.     That the Court declare, adjudge and decree that that Defendant is financially responsible for notifying all Class members about the wrongful conduct set forth herein;

3.     That the Court declare, adjudge and decree that that Defendant's failure to identify that the transmissions should be covered for the time period of the Extended Coverage pursuant to the California Emissions Warranty, constitutes an unfair and unlawful business practice in violation of California Business and Professions, Civil Code sections 17200, *et seq.*;

4.     For an order enjoining Defendant from further deceptive distribution, sales, and lease practices, compelling Defendant to properly and fully identify that the transmissions are covered for the duration of the Extended Coverage pursuant to the California Emissions Warranty; and to reimburse both Plaintiffs and Class members for the money wrongfully paid by Plaintiffs and Class members relating to these repairs which should have been covered by Defendant under the California Emissions Warranty;

5.     For an award to Plaintiffs and Class members of compensatory and statutory damages as appropriate, including interest, in an amount to be proven at trial;

6.     For an award to Plaintiffs and Class members of any repair costs they are owed;

7.     For a declaration that Defendant must disgorge, for the benefit of Plaintiffs and Class members, all or part of the ill-gotten profits it received as a result of the wrongful conduct set forth herein, or make full restitution to Plaintiffs and Class members;

8.     For the appointment of a receiver as necessary to receive, manage and distribute any and all funds disgorged from Defendant and determined to have been wrongfully acquired

by Defendant as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

      9.     For an award of attorneys' fees and costs, as allowed by law;

      10.    For an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

      11.    For an award of pre-judgment and post-judgment interest;

      12.    For leave to amend the Complaint to conform to the evidence produced at trial; and,

      13.    For all other relief as may be appropriate under the circumstances.

Date:  January 21, 2022                LAW OFFICE OF ROBERT STARR

                                   /s/ Robert Starr
                                   Attorney for Plaintiffs

Plaintiffs hereby demand a jury trial pursuant to Fed. R. Civ. P. 38(b).

Date: January 21, 2022                LAW OFFICE OF ROBERT STARR

                                   /s/ Robert Starr
                                   Attorney for Plaintiffs